## COMMONWEALTH vs. LOUIS PINA.

Suffolk. November 6, 1989. - January 23, 1990.

Present: LIACOS, C.J., WILKINS, ABRAMS, O'CONNOR, & GREANEY, JJ.

*Search and Seizure,* Expectation of privacy. *Constitutional Law,* Search
and seizure, Privacy. *Privacy. Practice, Criminal,* Argument by prose-
cutor, Indictment, Grand jury proceedings, Delay in commencement of
prosecution, Assistance of counsel. *Grand Jury. Evidence,* Prior convic-
tion. *Due Process of Law,* Delay in commencement of prosecution.
*Identification.*

At a hearing on a motion by a criminal defendant to suppress evidence
seized without a warrant from his wallet that he had left behind when
he was transferred from a prerelease center, or "halfway house," the
judge did not err in concluding that no search within the meaning of
the Fourth Amendment to the United States Constitution had taken
place and that; therefore, the reasonableness of the "intrusion" into the
wallet was not a relevant inquiry, where the evidence at the hearing as
a matter of law did not warrant a finding that any expectation of pri-
vacy that the defendant might have had with respect to the wallet was
a reasonable one. [544-546]

On an appeal from convictions of breaking and entering and rape, there
was no merit to the defendant's claims of prosecutorial misconduct.
[547-548]

Dismissal of indictments was not required where the evidence presented to
the grand jury was sufficient to establish the defendant's identity and
probable cause to arrest him, and where certain omissions during the
testimony of a police officer did not impair the integrity of the grand
jury proceeding. [548-549]

The judge at a criminal trial did not err in refusing to rule as to the admis-
sibility of the defendant's prior convictions before evidence of the con-
victions was offered. [549-550]

There was no merit to a criminal defendant's contentions that a twenty-
two month delay from the date of the crimes to the date of the indict-
ments against him entitled him to dismissal of the indictments; that the
trial judge was required to give the jury a so-called *Rodriguez* instruc-
tion (*Commonwealth v. Rodriguez,* 378 Mass. 296 [1979]) on mistaken
identity; or that trial counsel's tactics constituted ineffective assistance.
[550-551]

INDICTMENTS found and returned in the Superior Court Department on February 14, 1985.

A pretrial motion to suppress evidence was heard by *John Paul Sullivan*, J., and the cases were tried before him.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*James L. Sultan* for the defendant.

*Sharon B. Soffer*, Assistant District Attorney, for the Commonwealth.

*Barry Barkow*, for Massachusetts Correctional Legal Services, Inc., amicus curiae, submitted a brief.

The defendant, pro se, submitted a brief.

O'CONNOR, J. After a jury trial, the defendant appeals from convictions of breaking and entering a dwelling at night with intent to commit a felony and making an assault therein, and three counts of aggravated rape.[1] We transferred the case from the Appeals Court to this court on our own initiative.[2] We now affirm the convictions.

For background purposes, we state relevant facts which are uncontested except in one identified particular. The alleged crimes occurred at the victim's apartment on Revere Street, Boston, on the night of April 30 - May 1, 1983. The victim had been alone. A black man suddenly appeared in the doorway with a blouse owned by the victim's roommate covering his face. After a brief struggle, the man tied the victim's hands together, blindfolded her with the blouse, beat her and repeatedly raped her. The assailant left the victim's apartment at approximately 12:30 A.M. on May 1. The victim called the police and was transported to the hospital. The po-

---

[1] A third conviction, for assault and battery, was placed on file with the defendant's consent.

[2] The defendant filed a brief and record appendix in the Appeals Court pro se. The defendant subsequently filed a motion in this court for appointment of counsel, and counsel was appointed. The defendant then moved for leave to file a supplemental brief and record appendix. The supplemental brief and record appendix have been filed, and have been considered by this court.

lice collected blood, hair, and semen samples from within the apartment.

At the time of the attack, the defendant resided at Brooke House, a prerelease center or "halfway house" operated privately under a contract with the Department of Correction. The defendant was allowed to leave Brooke House, but he was subject to a curfew. A log kept by Brooke House showed that the defendant signed in at 12:45 A.M. on May 1, 1983, forty-five minutes past his curfew. Although there was conflicting evidence at trial, the jury could have found that Brooke House is approximately an eighteen-minute walk from the victim's apartment.

The principal issue at trial was the identity of the attacker. Prior to trial, the defendant moved to suppress evidence of a ticket to the play, "Amadeus," which the police claimed to have found in a warrantless search of the defendant's wallet. The ticket was highly significant because the victim's roommate would testify at trial that she had left such a ticket on the nightstand in her bedroom on the night of the attack and she never saw it again. The defendant's motion to suppress was denied.

The defendant argues that, in denying his motion to suppress, the judge erred. In the trial court, the defendant relied exclusively on the Fourth Amendment to the United States Constitution. On appeal, he also relies on art. 14 of the Massachusetts Declaration of Rights, as does amicus curiae, Massachusetts Correctional Legal Services, Inc. The theory on which a motion to suppress is presented in the trial court cannot be changed when the motion comes before this court for review. *Langton* v. *Commissioner of Correction*, 404 Mass. 165, 166 n.2 (1989). Therefore, we limit our review to the Fourth Amendment argument.

In this and the following three paragraphs, we set forth the relevant evidence presented at the hearing on the motion to suppress. At the time of the attack, the defendant resided at Brooke House. Although Brooke House residents typically have employment for which they are allowed to leave the facility daily, they are subject to search at any time, must tele-

phone in every day between 5 P.M. and 7 P.M., and are subject to rules governing such things as curfews, the use of telephones, visitors, and noise level.

The defendant had been transferred from the Department of Correction prerelease center at Massachusetts Correctional Institution, Shirley, to Brooke House in mid-March, 1983, and remained at Brooke House until May 26, 1983. In early June, 1983, about ten days to two weeks after the defendant had left Brooke House, a counselor there found the defendant's wallet in a resident's room. The counselor gave the wallet to Paul Leaman, the director of Brooke House. Leaman examined the wallet to determine its owner. After learning that the wallet was the defendant's, he placed it in the defendant's file. On June 17, 1983, Leaman gave the wallet to Detective Richard Ross. Ross briefly searched the wallet but did not find the ticket. Ross brought the wallet to the police station, where it remained until April, 1985. In April, 1985, Ross reexamined the wallet and found the ticket "tucked" inside the wallet.

When the defendant entered Brooke House, he signed several forms that provided that (1) he would remain under the custody of the Department of Correction; (2) he understood that "all rules and regulations" of the penal institution from which he had come would be "in effect"; (3) that he would submit to a search "as deemed necessary by staff"; and (4) that room searches "are conducted by the staff on a regular basis."

On cross-examination of Leaman, the defendant introduced a letter that Leaman had sent to the defendant on October 21, 1983, in response to a letter from the defendant. Leaman's letter stated that the defendant had written to Leaman on or about September 29, 1983, to inquire about some items of property that the defendant had left behind at Brooke House. There was nothing to suggest that the wallet was one of the items inquired about. The defendant submitted his affidavit at the suppression hearing. In it, he stated that he had "secured" his wallet by leaving it in "the area of [his] bed" at Brooke House, and then, after being trans-

ferred to Massachusetts Correctional Institution, Concord, he had telephoned a resident at Brooke House asking him to retrieve it.

In denying the motion to suppress, the judge made the following statement: "[I]n the context of this case, first of all there was no activity that would have required a search warrant. Secondly, the items were obtained within the Brooke House facility, and the employees therein had the right to search, but in any event, it appears that the item was left in the Brooke House facility subsequent to the time when [the defendant] had left the facility, at least ten days to two weeks later.

"For these reasons, as a matter of law I find no basis upon which the motion to suppress relied, and I deny it."

Unless the ticket was discovered in a "search" in the Fourth Amendment sense of that word, the defendant was not entitled to its suppression despite the lack of a warrant. Whether the government's activity amounted to a search depends on whether the activity intruded on the defendant's reasonable expectation of privacy. *Rawlings* v. *Kentucky*, 448 U.S. 98, 104-106 (1980). *Rakas* v. *Illinois*, 439 U.S. 128, 143 (1978). *Katz* v. *United States*, 389 U.S. 347, 360-361 (1967) (Harlan, J., concurring). *Commonwealth* v. *Chappee*, 397 Mass. 508, 512 (1986). For a search to have taken place, the defendant must have had a subjective expectation of privacy, and that expectation must have been one that society recognizes as objectively reasonable. *Commonwealth* v. *Panetti*, *ante* 230, 231-232 (1989). *Commonwealth* v. *D'Onofrio*, 396 Mass. 711, 714 (1986). In connection with a suppression motion, a defendant has the burden of establishing that the government has intruded on his or her reasonable expectation of privacy, thus establishing that a search has taken place. *Id.* at 714-715. Then, but only then, the government has the burden to show that its search was reasonable and therefore lawful. *Commonwealth* v. *Antobenedetto*, 366 Mass. 51, 57 (1974).

It is clear that the judge determined that no search within the meaning of the Fourth Amendment had taken place, and

that therefore it was unnecessary for him to consider whether a warrantless search of the defendant's wallet would have been lawful. It is less clear whether the judge found as a fact that, at the time the ticket was found, the defendant had no expectation of privacy, or instead ruled, either on the basis of unarticulated findings, or as a matter of law on the evidence, that the defendant's privacy expectation with respect to his wallet was not reasonable. See *Commonwealth* v. *Cadoret*, 388 Mass. 148, 150 (1983) (the reasonableness of an expectation, found to have existed as a matter of fact, is a legal conclusion subject to the court's de novo review). In any event, we are satisfied that the judge's conclusion that no "search" had taken place, and that therefore the reasonableness of the "intrusion" into the wallet is not a relevant inquiry, was correct. The judge's conclusion was correct because the evidence at the suppression hearing as a matter of law did not warrant a finding that any expectation of privacy that the defendant might have had with respect to the wallet was a reasonable one.

We may look to several factors in determining the reasonableness of an individual's expectation of privacy. The nature of the place where the government activity occurs, while not controlling, is nevertheless relevant, *Commonwealth* v. *Blinn*, 399 Mass. 126, 128, appeal dismissed, 482 U.S. 921 (1987); *Commonwealth* v. *Chappee, supra* at 512, as is the question whether the defendant owned the place, *Rawlings* v. *Kentucky*, 448 U.S. 98, 104 (1980); *Commonwealth* v. *Mora*, 402 Mass. 262, 265 (1988), or controlled access to it. *Sullivan* v. *District Court of Hampshire*, 384 Mass. 736, 742 (1981). Also, consideration of whether the defendant had a possessory or ownership interest in the item taken or inspected is appropriate, see *United States* v. *Lisk*, 522 F.2d 228, 230-231 (7th Cir. 1975), cert. denied, 423 U.S. 1078 (1976), after remand, 559 F.2d 1108 (7th Cir. 1977), as is consideration of whether the defendant has taken normal precautions to protect his privacy. *Commonwealth* v. *D'Onofrio, supra* at 714-715. *Commonwealth* v. *Simmons*, 392 Mass. 45, 50, cert. denied, 469 U.S. 861 (1984). Taking

those factors into account, we conclude that the evidence at the suppression hearing, viewed as favorably as possible to the defendant, would not have warranted the judge in concluding that any expectation of privacy in his wallet and its contents that the defendant may have had when Brooke House director Leaman first turned the wallet over to Detective Ross in June, 1983, or when Ross reexamined the wallet almost two years later, was reasonable. The defendant, as a matter of law, did not sustain his burden of proof.

We recognize that Brooke House is not a prison, and that therefore the holding of *Hudson* v. *Palmer*, 468 U.S. 517, 525-526 (1984), that the Fourth Amendment does not extend to a prison cell, is not controlling here. Nonetheless, we think it is appropriate to recognize that reasonable expectations of privacy at a "halfway house" like Brooke House, while arguably greater than in a prison setting, must be considerably less than in a private home or business location. In addition, we are not confronted in this case with a question of the reasonableness of the privacy expectations of a current resident of a halfway house, or even of a current prison inmate, with respect to items he may have retained in his possession and taken normal precautions to protect from the gaze of others. The defendant, on whom the burden of proof rested, at best showed that he left his wallet behind when he was transferred out of Brooke House, that he left it with another resident who was subject to search in accordance with the rules and policies of that institution, that sometime after his transfer he called a resident at Brooke House to retrieve it, and that several months after his transfer he wrote to Brooke House's director inquiring about some items, not necessarily including the wallet, that he had left behind. We conclude as a matter of law that the defendant's demonstrated conduct without more would not warrant the conclusion that he had taken normal precautions to implement any expectation of privacy he may have had in his wallet, or that any expectation of privacy that he may have had was sufficiently reasonable to invoke Fourth Amendment rights. The motion judge did not err in denying the motion to suppress.

We move on to other issues raised by the defendant, beginning with the defendant's claims of prosecutorial misconduct. In his pro se brief filed in the Appeals Court, the defendant focuses on statements attributed to the prosecutor appearing in Boston newspapers approximately one year before the trial. The prosecutor was quoted as saying that the unnamed suspect in the present case had also committed a rape on Beacon Hill in 1978 for which he had never been charged. The story also reported that this assailant had previously been convicted of rape. The defendant argues that those statements impaired his right to a fair trial by an impartial jury. The argument fails because, during the course of empanelment, the judge interrogated the venire with respect to their possible bias, and no juror responded affirmatively. Defense counsel manifested no dissatisfaction with the content of the questions. Nothing in the record shows a reasonable likelihood that the jury was influenced by the published statements.

The second claim of prosecutorial misconduct is directed to an occurrence during the prosecutor's direct examination of the victim. The defendant had filed a pretrial motion for an in-court identification in a lineup. The prosecutor told the judge that the victim could not identify the defendant as her assailant and, as a result, the judge denied the motion. During the victim's direct examination, however, the prosecutor asked: "Now based upon that time period [when the attacker was in the room unmasked], did you have a chance to look at this gentleman seated right here [pointing to the defendant]?" There was no objection to the question, and the victim answered, "Yes, sir." The prosecutor then asked, "Based upon the observations that you made during that limited time period, can you tell this Jury whether or not this is the same person in your mind that was in your apartment that particular night?" Defense counsel objected and requested a sidebar conference.

At the sidebar conference, the prosecutor said that, during a recess the victim had told him that, after observing the defendant in the courtroom, she was able to identify him as her

attacker. On the basis of that representation, the judge over-ruled defense counsel's objection. However, when examina-tion of the witness resumed, the question was not repeated. Furthermore, the question was never answered.

The impropriety with which the defendant now charges the prosecutor is that the prosecutor's questions, together with the prosecutor's pointing to the defendant, suggested to the jury that the witness could identify the defendant as her attacker even though she never really did so expressly. It seems clear to us, however, that, when the witness answered "Yes, sir" to the unobjected-to question whether she had had a chance in her apartment to see "this gentlemen seated right here," with counsel pointing to the defendant, the wit-ness did indeed expressly identify the defendant as her at-tacker. Any further identification implied in a subsequent question, therefore, would have been superfluous and there-fore harmless.

We recognize that neither counsel appears to have inter-preted the testimony in that way. Both at trial and on appeal, counsel have assumed that there was no express identification of the defendant as the assailant. Even if that were the case, no prosecutorial misrepresentation or other misconduct has been shown, and the judge's instruction to the jury that counsel's questions do not constitute evidence was adequate to dispel any suggestiveness in the prosecutor's question to which defense counsel objected.

The defendant's third assertion of prosecutorial error is also without merit. There was evidence that soon after the crime the defendant changed his hair style and shaved off his moustache. In final argument, the prosecutor posed the ques-tion why someone might do that. The argument was proper. *Commonwealth* v. *Kater*, 388 Mass. 519, 535 (1983).

The defendant argues that the indictments should have been dismissed pursuant to his motion both because the evi-dence presented to the grand jury was insufficient and be-cause other essential evidence was withheld in a manner that impaired the integrity of the grand jury proceeding. We disa-gree. Detective Ross testified before the grand jury that the

victim's general physical description of the assailant as a black male, five feet nine inches to six feet tall with an afro hairstyle and a moustache, matched that of the defendant. Ross further testified that the defendant had cut his hair close and shaved off his moustache after the rapes, that his blood type was the same as the assailant's, that pubic hair consistent with the defendant's was found at the apartment, that the defendant lived at Brooke House, which was approximately fifteen minutes from the apartment, and that he arrived at Brooke House on the night in question approximately fifteen minutes after the victim said the assailant had left her apartment. Ross also testified that another woman had told him that she had been raped by the defendant while she lived in that same apartment in 1978. The defendant complains about the use of hearsay evidence before the grand jury. However, such evidence is permissible. *Commonwealth v. O'Dell*, 392 Mass. 445, 450-451 (1984) (indictment may be based solely on hearsay evidence). Furthermore, the evidence was sufficient. *Id.* at 450-451. *Commonwealth v. McCarthy*, 385 Mass. 160, 163 (1982) (evidence must be sufficient to establish identity of accused and probable cause to arrest him).

Detective Ross did not inform the grand jury that the victim could not positively identify the defendant as her assailant, or that the defendant denied the alleged earlier rape in the same apartment. Ross did not testify that the defendant was only five feet seven inches tall, and Ross omitted other information that was arguably exculpatory. We reject the defendant's arguments that those omissions were fatal to the indictments. Unlike the case of *Commonwealth v. O'Dell, supra*, the omissions here did not distort the material that was presented to the grand jury, and we have repeatedly held that the mere withholding of exculpatory evidence without more is not a proper ground for dismissal of an indictment. *Commonwealth v. McGahee*, 393 Mass. 743, 746-747 (1985). *Commonwealth v. O'Dell, supra* at 447.

The defendant filed a pretrial motion in limine to exclude his criminal record which, according to the prosecutor's oral

statement to the judge, included convictions of rape, assault and battery, possession of burglarious tools, breaking and entering, larceny over and under $1,500, obtaining money by false pretenses, forgery, and unlawful possession of drugs. The judge denied the motion without prejudice to defense counsel's renewal of the motion during the trial. Counsel renewed the motion after all the defense witnesses, not including the defendant, had testified. The judge then allowed the motion as to the rape conviction, but he refused to rule as to the admissibility of the other convictions, stating that he would rule on those if and when the Commonwealth offered them.

The defendant did not testify. He argues that, by refusing to rule on his motion to exclude the convictions before he made his election whether or not to testify, the judge deprived him of information that was critical to that choice, thereby impairing his right to give alibi testimony. "We have indicated that 'it is desirable, if feasible, that this [ruling] should occur at an early moment,' *Commonwealth* v. *Diaz*, 383 Mass. 73, 81 (1981), but we have recognized that an advance ruling is not required. *Commonwealth* v. *King*, 391 Mass. 691, 695 (1984)." *Commonwealth* v. *Andrews*, 403 Mass. 441, 456 (1988). We continue to adhere to that principle. There was no error.

We have examined the defendant's remaining arguments and have concluded that they are without merit and require little, if any, discussion. The defendant asserts that it was error to deny his motion to dismiss the indictments grounded on the twenty-two month delay from the date of the crimes to the date of the indictments. "To meet his burden of showing that preindictment delay denied him due process of law under the State or Federal Constitutions a defendant must prove both that the delay prejudiced his case and that the government intentionally or recklessly caused that delay." *Commonwealth* v. *Patten*, 401 Mass. 20, 21 (1987). The defendant proved neither.

The defendant complains that the trial judge failed to give the jury a so-called *Rodriguez* instruction (*Commonwealth* v.

*Rodriguez*, 378 Mass. 296 [1979]) on mistaken identity. As we noted earlier in this opinion, neither trial counsel appeared to recognize that the victim had identified her assailant, and the defendant did not request a *Rodriguez* instruction. Therefore, he cannot rightly claim that the judge's failure to give such an instruction was reversible error.

Lastly, the defendant makes a variety of ineffective assistance of counsel claims, including the claim that trial counsel's failure to request a *Rodriguez* charge constituted ineffective assistance. After reviewing the defendant's claims, we are satisfied that defense counsel's behavior did not "fall[] measurably below that which might be expected from an ordinary fallible lawyer" nor did it "deprive[] the defendant of an otherwise available, substantial ground of defence." *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). It may well be that, had counsel requested a *Rodriguez* instruction based on the victim's testimony, the instruction would only have highlighted an in-court identification that was not mentioned in the prosecutor's summary to the jury and that may well have escaped the notice not only of counsel but of the jury as well. We cannot fairly say that the lack of such an instruction deprived the defendant of a substantial ground of defense.

*Judgments affirmed.*