408 Mass. 147 (1990)
557 N.E.2d 721
COMMONWEALTH
vs.
ALBERT LEWIN (No. 3).
Supreme Judicial Court of Massachusetts, Suffolk.
May 30, 1990.
July 23, 1990.
Present: LIACOS, C.J., WILKINS, LYNCH, O'CONNOR, & GREANEY, JJ.
*148 Thomas J. Mundy, Assistant District Attorney (Susan Underwood, Assistant District Attorney, with him) for the Commonwealth.
Max D. Stern (Patricia Garin with him) for the defendant.
GREANEY, J.
The Commonwealth applied to a single justice of this court for leave to appeal an order of the Superior Court judge assigned the trial of these criminal cases. The order in question directed that certain evidence, described as the Ben Leong bag of evidence (in view of the fact that Detective Benjamin Leong initially received the bag containing the evidence while at the scene), seized by the police from 104 Bellevue Street following the killing of Officer Sherman Griffiths, be suppressed. The Commonwealth's application for an interlocutory appeal was brought pursuant to G.L.c. 278, § 28E (1988 ed.), and Mass. R. Crim. P. 15 (b) (2), 378 Mass. 884 (1979), and was opposed by the defendant. The single justice held a hearing and reserved and reported the application to the full court. We conclude that the appeal should be considered on its merits and that the order of suppression entered by the judge was correct.
1. Rule 15 (b) (2) is based on G.L.c. 278, § 28E,[1] and sets forth the procedure for an interlocutory appeal of a motion to suppress that has been decided in the Superior Court. In pertinent part, the rule provides that "the Commonwealth shall have the right and opportunity to apply to a single justice of the Supreme Judicial Court for leave to appeal a decision, order, or judgment determining a motion to suppress *149 evidence prior to trial. If the single justice determines that the administration of justice would be facilitated, he may grant that leave and may hear the appeal or may report it to the full Supreme Judicial Court or to the Appeals Court." In addition, Mass. R. Crim. P. 15 (b) (3), 378 Mass. 884 (1979), provides that any application for leave to appeal under subdivision (b) (2) of this rule shall be "filed within [a] reasonable time after the ruling of the judge ... and in any event before the defendant has been placed in jeopardy."
The procedural background of the instant application is as follows. On December 13, 1989, the defendant filed a motion to suppress evidence allegedly seized from the third-floor apartment at 104 Bellevue Street. On January 17 and 18, 1990, an evidentiary hearing was held on the motion. Thereafter, the evidentiary hearing was reopened and further evidence taken on February 21 and 22, 1990. On March 2, 1990, the judge entered his "Findings of Fact, Rulings of Law, and Order for Judgment," which denied the motion in part, but allowed suppression of some evidence, including the Leong bag of evidence which is in issue here. On March 5, 1990, the defendant sought and obtained from a single justice of this court leave to pursue an interlocutory appeal from the portion of the judge's decision that was adverse to him. That appeal has been heard and decided. See Commonwealth v. Lewin (No. 1), 407 Mass. 617 (1990). The Commonwealth did not immediately seek leave to appeal the portion of the judge's decision that ordered suppression of the Leong bag of evidence. Instead, on March 26, 1990, the Commonwealth moved before the judge for reconsideration of his order allowing suppression. Reconsideration was opposed by the defendant (both parties were allowed time to prepare and present written memoranda of law), and, on April 12, 1990, the judge, after reconsideration, directed that his original order suppressing the Leong bag of evidence stand. On April 13, 1990, the Commonwealth filed with the single justice the application for leave to appeal that is presently before us.
*150 The defendant argues that the Commonwealth was required to file its application for leave to appeal from the decision ordering suppression of the Leong bag of evidence in time to have it acted upon contemporaneously with the defendant's application for leave to appeal from the orders in the same judgment that were adverse to him. The defendant also argues that the Commonwealth's application was not filed within a reasonable time, and that allowing the application will not facilitate the administration of justice. As has been noted, both of these are standards stated in rule 15 (b) (2) and (3).
We agree with the general propositions asserted by the defendant that "interlocutory appeals ... should not be permitted to become additional causes of the delays in criminal trials which are already too prevalent," Commonwealth v. Cavanaugh, 366 Mass. 277, 279 (1974), and that there is a need for a speedy and just adjudication of criminal cases. We also agree that courts should seek "to avoid piecemeal appellate consideration" of criminal cases. Commonwealth v. Smith, 384 Mass. 519, 524 (1981).
The Commonwealth's delay in seeking this appeal, however, does not violate these principles. While it might have been more practical to do so, the Commonwealth was not required to seek leave to appeal at the time the defendant sought permission to pursue his appeal. The charges include an accusation of murder in the first degree, the most serious of offenses. The Commonwealth could take a reasonable period of time to study the judge's decision to see if an appeal might have merit and then, if it chose, to seek reconsideration by the judge of his order before pursuing an appellate remedy. A delay of forty-one days from the time of the judge's initial decision to the time of the Commonwealth's application to the single justice is not per se unreasonable. That period of time is certainly not unreasonable in view of the nature of the charges and the fact that the case has proved to be lengthy, complex, and the subject of numerous appeals. Further, there is no indication that the Commonwealth delayed matters to put the defendant at any disadvantage *151 By reason of the earlier appeals that have been allowed to both the Commonwealth and the defendant, the trial has been postponed. Therefore, considering the merits of this appeal will not further delay the trial nor unfairly affect the defendant's entitlement to a speedy resolution of the charges against him. Finally, an examination of the issues sought to be raised by the Commonwealth in the appeal disclose them to be of merit in the sense that they are worthy of consideration and resolution by an appellate court. Despite the defendant's arguments to the contrary, we are persuaded that permitting the appeal will not frustrate the rules of criminal procedure which seek to limit interlocutory appeals and to call for the prompt and orderly disposition of criminal cases. We, therefore, grant the Commonwealth's application and proceed to consider the merits.
2. The items comprising the Leong bag of evidence are conceded by the Commonwealth to have been seized sometime during the night of February 17, and in the early morning hours of February 18, 1988, from 104 Bellevue Street before the issuance of a valid warrant. The Commonwealth contends that the judge erred in ordering the evidence suppressed because (1) the bag of evidence did not fall within the scope of the defendant's motion to suppress; (2) the prosecutor had no notice that validity of the seizure of the items was in issue and, therefore, no proper opportunity to litigate the suppression issue; and (3) the judge's factual findings and legal reasoning concerning the status of the evidence are clearly wrong.
The facts necessary to a resolution of these issues are as follows. As has been stated, on December 13, 1989, the defendant filed a motion to suppress "all items allegedly seized from 104 Bellevue Street, Apartment #3[,] on February 17 and 18, 1988[,] that [were] not listed on the inventory of the February 18th search warrant return." The motion was supported by a memorandum of law.
An evidentiary hearing on the motion was held on January 17 and 18, 1990. On the first day of the hearing (January 17, 1990), testimony was presented that, sometime between 9 *152 P.M. and midnight on February 17, 1988, the identification unit of the Boston police department made a warrantless search of the third-floor apartment at 104 Bellevue Street and seized numerous items from the premises. Officer Daniel Sullivan testified that he took items seized from 104 Bellevue Street to the identification section at approximately 11 P.M. He identified the items set forth on "List A" (exhibit 8 at the hearing) as items seized from the third-floor apartment. Detective Benjamin Leong testified that he also took items seized from 104 Bellevue Street to the identification section that night. Leong said he brought the items to Officer Kenneth J. Shaw at about 5 or 6 A.M. However, he did not know from which apartment the items had been taken, when they had been taken, or who had taken them. He testified that he did not participate in any search of either apartment on the night in question and that Deputy Superintendent James Wood had handed him the bag of evidence and told him to take it to the identification section to see "if they can ... retrieve any latent prints." Officer Shaw, however, testified that he thought that Leong brought the evidence in at about 2 A.M. Shaw listed the items that Leong brought into the identification section on "List B" (exhibit 9 at the hearing).[2]
*153 On the second day of the hearing (January 18, 1990), Deputy Superintendent Wood testified that he was never at 104 Bellevue Street on the night in question, and he had no recollection of having given Leong any bag of evidence. The evidence also established that at approximately 3:30 A.M. on February 18, 1988, Detective Brendan Bradley obtained warrants to search the first and third-floor apartments at 104 Bellevue Street, and that the warrants were executed at 4:45 A.M.
On January 24, 1990, the Commonwealth filed a posthearing memorandum of law. The Commonwealth offered no explanation for the Leong bag of evidence. On January 26, 1990, the defendant filed a posthearing memorandum of law. In his memorandum, the defendant expressly focused on the items contained in the Leong bag of evidence arguing in relevant part as follows:
"[T]his Court should suppress all items on List B . .. since it can never be determined whether or not any of these items were seized from the third floor apartment.... The items of evidence on List B . .. were turned over to the identification unit by [Drug Control Unit] officer Ben Leong sometime prior to 2:00 a.m. on February 18, 1988. (Testimony of Kenneth Shaw) Although Ben Leong testified that he did not seize the items and that they were simply handed to him by Deputy Wood, Deputy Wood had no memory of ever having possession of these items. (Testimony of Deputy Wood) *154 It is certain, however, that Leong, a Drug Control Unit officer, was at Bellevue Street immediately after the shooting. (Testimony of Ben Leong, Brendan Bradley, and John Sullivan) And, although it was the Commonwealth's burden to prove that these items were lawfully seized, it offered absolutely no evidence at the hearing concerning who seized the items, when the items were seized, and from which apartment the items were seized."
On February 15, 1990, the defendant filed a supplemental memorandum of law in support of his motion to suppress evidence allegedly seized from the third-floor apartment at 104 Bellevue Street. The defendant argued that information presented at an evidentiary hearing on another pretrial motion had become relevant to the motion to suppress evidence that had been heard a few weeks before. Thereafter, the hearing on the motion to suppress was reopened by the judge and additional evidence was heard on February 21 and 22, 1990.
On the last day of the renewed evidentiary hearing (February 22, 1990), Lieutenant John Sullivan testified that it was his recollection that certain items of evidence, namely, five paperfolds, four plastic bags, and three syringes  all listed on the return for the 3:30 A.M. search warrant for the first-floor apartment  actually had been seized by Detectives James Farrell, Edward Walsh, and Leong immediately after the shooting. Written notes which allegedly documented the seizure of these items were marked for identification but never introduced in evidence.[3] However, the testimony *155 of Farrell and Leong (Walsh did not testify), given earlier in the hearing, directly contradicted Sullivan. Both Leong and Farrell testified that they seized nothing from either apartment on the night in question.
Closing argument on the defendant's motion was heard on February 23, 1990. The Commonwealth offered no further explanation for the Leong bag of evidence.
On March 2, 1990, the judge issued his "Findings of Fact, Rulings of Law and Order for Judgment," in which he allowed the defendant's motion to suppress the Leong bag of evidence (List B). As to this evidence, the judge made the following factual findings:[4] "Sometime after the shooting and before the issuance of a search warrant, Detective Benjamin Leong ... was handed a bag of items allegedly seized from 102-104 Bellevue Street.... It is unknown from whom Leong received these items.... It is also unknown from where, by whom and at what time these items were seized.... Leong brought these items to the Identification Unit where Officer Kenneth J. Shaw inventoried them...." The judge also found that there were "several items unaccounted for and allegedly seized from Apt. 3." One such group of items, he continued, was comprised in the Ben Leong bag of evidence: "Sometime after the initial warrantless search and before the issuance of the search warrant, Detective Leong was handed a bag containing twenty-nine (29) items allegedly seized from 102-104 Bellevue Street.... The testimony throughout this hearing reveals the uncertainty surrounding these items. Specifically, the court is unable to determine who seized these items, from which apartment and at what time." The judge ruled that the Leong bag of evidence should be suppressed because its contents were not shown to have been seized under a valid *156 search warrant and because no exception to the search warrant requirement had been shown. The judge reasoned essentially that, since it could not be shown that the evidence was not taken from the third-floor apartment and since there was no claim that it was taken pursuant to a valid warrant, the Commonwealth had to establish an exigency to justify the warrantless seizure of evidence. Because the Commonwealth could not even establish when, by whom, or from where the evidence was seized, it was obviously unable to establish the existence of an exigency. We turn now to the Commonwealth's particular arguments urging reversal.
The Commonwealth first contends that it had no notice that the Leong bag of evidence was a target of the defendant's suppression motion, and, therefore, no opportunity to litigate the issue. The record does not support the contention.
Although the defendant's motion, as filed, concerned the evidence seized from the third-floor apartment at 104 Bellevue Street, as early as the initial evidentiary hearing on the motion (on January 17 and 18, 1990), the defendant elicited testimony from Detective Leong and Deputy Superintendent Wood calling into question the origin of the Leong bag of evidence. Following the initial two days of hearings, the defendant's posthearing memorandum of law expressly requested, based on the testimony that had been given, that the items in the Leong bag of evidence be suppressed on the ground that no lawful predicate for their seizure had been shown. The hearings were then reopened for two more days of evidence (on February 21 and 22, 1990), during which the Commonwealth presented evidence from Detective Sullivan in an apparent attempt to establish that the items in the Leong bag of evidence were taken from the first-floor apartment at 104 Bellevue Street. Thus, there was specific inquiry at the hearings about the evidence, an inquiry initially begun by the defendant in an effort to determine what items had been seized by a warrantless search and what items had been seized pursuant to warrant, and pursued by the Commonwealth in an effort to show that the items in the Leong bag of evidence came from the first-floor apartment. Despite *157 these indications that the Leong bag of evidence was properly in dispute at the hearing, the Commonwealth asserts in a postargument letter to the court that "the true focus of the hearing was not where particular items had been seized from but rather when they were seized" (emphasis in original). While one focus of the hearing was clearly on temporal events, a fair reading of the evidence discloses that counsel were endeavoring to discover not only when but from where and by whom the various items were seized.[5] We conclude that the Commonwealth was expressly put on notice that the Leong bag of evidence was at issue under the suppression motion. Nothing prevented the Commonwealth, given the opportunity of a full evidentiary hearing, from focusing its inquiry however it chose. That the Commonwealth did not choose to focus it at the hearing in the Superior Court as it would now choose to do speaks to matters of trial strategy, not to questions of fair notice and opportunity to be heard.
The Commonwealth also argues that it was incumbent on the defendant to show that the twenty-nine items in the Leong bag of evidence were seized from the third-floor apartment at 104 Bellevue Street. The Commonwealth maintains that the defendant failed to do this, and therefore failed to make a preliminary showing that the evidence was seized in violation of his rights. See generally Commonwealth v. Pina, 406 Mass. 540, 544 (1990); Commonwealth v. Antobenedetto, 366 Mass. 51, 57 (1974). In the Commonwealth's view, the judge should have considered the issue no further and denied the request for suppression. We do not agree.
In his memorandum of law filed on January 26, after the initial two days of hearing, the defendant specifically requested that the Leong bag of evidence be suppressed. The defendant thus asserted, at least by implication, that the bag of evidence fell within the class of items involved under the *158 terms of his motion. Thus, the defendant asserted that the Leong bag of evidence had been seized from the third-floor apartment. The judge found that the Leong bag of evidence was "allegedly seized" from the third-floor apartment at 104 Bellevue Street. Although there was no conclusive evidence that the Leong bag of evidence had been taken from that apartment, there was at least some evidence that it might have been seized there.[6] It is apparent, therefore, that in attempting to unravel the issues placed before him, the judge (a) considered the possibility that the Leong bag of evidence had been seized in the warrantless search of the third-floor apartment (thus raising the question whether it was seized pursuant to a lawful protective search, see Commonwealth v. Lewin [No. 1], supra at 627); (b) considered doubtful the Commonwealth's contention that the evidence (or at least some of it) had come from the first-floor apartment; (c) decided that the defendant had made a sufficient showing to require the Commonwealth to justify seizure of the evidence; and (d) concluded that the Commonwealth could not do so because it could not even show at the threshold from where the evidence had been seized.
The problem, therefore, is not, as the Commonwealth suggests, whether the traditional burdens of proof in connection with the hearing and disposition of motions to suppress were correctly applied by the judge. See Commonwealth v. Pina, supra; Commonwealth v. Antobenedetto, supra. As far as we can see, they were. It was undisputed that the Leong bag of evidence was part of the general store of material amassed during an extensive warrantless search of 102-104 Bellevue *159 Street on the night in question. The defendant was able to demonstrate that the police could not account for the seizure of the evidence in any material respect, and the judge rejected as unpersuasive the Commonwealth's weak and contradictory efforts to do so. In view of the history of the case, the judge was well within his rights to be skeptical of the police testimony. See Commonwealth v. Lewin, 405 Mass. 566, 585 (1989). Obviously, the police who obtained the evidence were the only source of information as to the particulars of the searches and seizures. The Commonwealth cannot avoid a motion to suppress simply by showing that the police cannot establish where, when, or how the evidence was seized. When a defendant shows that the police cannot satisfactorily explain these fundamental points, as they could not do here, a judge can resolve doubts against the police and conclude that failure in a very primary task leaves the record devoid of a factual basis to justify a finding that the contested evidence was lawfully seized.
Faced with this difficulty, the Commonwealth argues that the judge's factual findings are clearly erroneous. There is no question that the judge's finding that it was "unknown from whom Leong received [the] items" has adequate record support,[7] as does his conclusion that he was "unable to determine who seized these items, from which apartment and at what time."[8] Nevertheless, the Commonwealth claims that a *160 careful comparison of the items which are included in the inventory on List B with the items listed in the notes for the return on the first-floor search warrant (exhibit D at the hearing) establishes conclusively that at least some of the items are identical, and, therefore, that at least some of the items in the Leong bag of evidence were seized from the first and not the third-floor apartment.
We are not persuaded that we should overturn the judge on this attenuated line of analysis. In the first place, not even the Commonwealth argues that all of the items in the Leong bag of evidence can be accounted for. Indeed, no explanation has been offered for at least nine out of twenty-nine items. Thus, the origin of the entire lot is not even at issue. And second, even the items at issue are not evidently identical to those items listed on the notes for the return on the first-floor warrant (exhibit D). Those notes identify five paperfolds, four plastic bags, and three syringes while the List B inventory includes evidence of six paperfolds, five plastic bags, and eight syringes. Further, the Commonwealth has not established any testimonial link between the one list and the other.
Further, neither the notes for the return on the first-floor warrant nor the return itself was introduced in evidence. (The return itself was not attached to the warrant which was introduced in evidence and the notes for the return, while physically present at the hearing, were marked only for identification.) Moreover, the Commonwealth concedes that the return based on these notes is inaccurate or false because the items allegedly seized pursuant to warrant were in fact seized at some prior time. After the defendant's presentation at the start of the hearing, the judge cast a dubious eye at the whole situation involving the Leong bag of evidence, and he sought clear and consistent proof on which to base a finding *161 that the items in issue had been lawfully seized. Such proof was lacking and the scene depicted, instead, was one of casual disregard of governing Fourth Amendment standards. See Commonwealth v. Lewin (No. 1), 407 Mass. 617, 621 (1990). The judge's findings are not clearly erroneous and his legal reasoning is sound. The order directing suppression of the items contained in the Leong bag of evidence (as identified in List B, exhibit 9 at the hearing) is affirmed.
So ordered.
NOTES
[1] The second paragraph of G.L.c. 278, § 28E, provides as follows: "An appeal may be taken by and on behalf of the commonwealth by the attorney general or a district attorney from the superior court to the supreme judicial court in all criminal cases from a decision, order or judgment of the court (1) allowing a motion to dismiss an indictment or complaint, or (2) allowing a motion for appropriate relief under the Massachusetts Rules of Criminal Procedure."
[2] There are twenty-nine items on this list as follows:
"Item #01 KNIFE (Buck type)
 Item #02 3 & 1/4 Glass Bottle With side glass tube.
 Item #03 4 & 1/4 glass bottle With side glass tube.
 Item #04 4 & 1/2 Glass tube with three openings.
 Item #05 Bottle cap, gold in color.
 Item #06 Bottle cap, gold in color.
 Item #07 Bottle cap, gold in color.
 Item #08 White syringe with plunger.
 Item #09 Clear syringe with plunger.
 Item #10 Clear syringe with plunger.
 Item #11 Syringe, gold color.
 Item #12 Syringe, gold color.
 Item #13 Clear syringe with-out plunger.
 Item #14 Syringe with plunger, orange tip.
 Item #15 Syringe with plunger, orange tip.
 Item #16 Paper wrapping, color red & green.
 Item #17 One page of a newspaper, black print.
 Item #18 Plastic bag (small).
 Item #19 Paper fold (with white powder) Marked #2
 Item #20 Paper fold (with white powder) Marked #3
 Item #21 Paper fold (with Powder) Marked #4a
 Item #22 Paper fold (white powder) Marked #4b
 Item #23 Paper fold (white powder) Marked #4c
 Item #24 Paper fold (white Powder) Marked P.O. Carlos.
 Item #25 Paper fold (white powder) Marked PC Buy.
 Item #26 Plastic bag with white powder, Marked #1
 Item #27 Plastic bag with white powder, Marked #2
 Item #28 Plastic bag with white powder, Marked #3
 Item #29 Plastic bag with white powder, Marked #4"

[3] Those notes read as follows:
 "104 Bellevue St. J. Farrell
 1st floor found B. Leong
 E. Walsh
 5 paperfolds w/p
 4 small p/b w/p
 3 syringes

The notes were allegedly written by Detective Raynaldo Vialpando. As can be seen, the notes initially listed "B. Leong" and "E. Walsh" as the officers who had seized the paperfolds, plastic bags, and syringes. However, those names were crossed out and the name "J. Farrell" inserted in their place.
[4] The judge's findings with respect to other items of evidence involved in the hearing on the motion to suppress are set forth in Commonwealth v. Lewin (No. I), supra at 618-621.
[5] On the very first day of testimony, for example, Detective Leong was expressly asked in reference to his bag of evidence, "Did [Wood] tell you where the evidence was found?," and, again, "You have no idea where those items had been found in the building?"
[6] It is undisputed that members of the drug control unit searched the third-floor apartment for drugs without a warrant during and after the search by the identification unit. It is also undisputed that Detective Leong, a member of the drug control unit, brought twenty-nine items of evidence to the identification section for fingerprinting during the early morning hours of February 18, 1988. And although Detective Bradley testified that he did not know from where the items in the Leong bag had been seized, he also testified that "[t]here was no need to fingerprint the first-floor apartment items [because t]he incident happened [in] the thirdfloor apartment."
[7] Although Leong testified that Wood gave them to Leong, Wood denied it; although Sullivan testified that Sullivan gave them to Leong, Leong denied it. And it was also unknown "by whom and at what time these items were seized." Leong did not know whether they came from the third floor or the first floor. And although he testified that he brought these items to the identification section at about 5 or 6 A.M. (after the search under valid warrant), Shaw testified that Leong brought these items to the identification section at about 2 A.M. (before the search under valid warrant).
[8] Although Sullivan testified at the reopened evidentiary hearing that he received five paperfolds, four plastic bags, and three syringes from Walsh, Farrell, and Leong who had taken them from under a bed in the first-floor apartment, and that he subsequently handed the items back to either Walsh or Leong, both Farrell and Leong expressly denied seizing anything from either floor, and Leong claimed that Wood, not Sullivan, handed him the items in his bag. Further, although paperfold items, plastic bags, and syringes are included among the items inventoried on List B (the inventory list for the Leong bag of evidence), there is no testimony linking the items Sullivan claims to have found on the first floor (allegedly documented in the notes for the return on the first-floor warrant) with the items in the Leong bag of evidence.