NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-289

COMMONWEALTH

vs.

BENJAMIN GONZALEZ.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The Commonwealth brings this interlocutory appeal from a Superior Court judge's order allowing the defendant's motion to suppress evidence obtained in the warrantless search and seizure of a package.  The judge ruled that the Federal postal officials' detention of the package was not supported by reasonable suspicion.[1]  We affirm.

Background.  We summarize the facts as found by the motion judge, supplemented with undisputed evidence from the record

---

[1] The judge denied the defendant's initial motion to suppress.  The defendant filed a motion for reconsideration arguing, in part, that the initial detention of the package was unsupported by reasonable suspicion.  The judge issued a final order allowing the motion for reconsideration and allowing the motion to suppress.  The judge denied the Commonwealth's motion to reconsider, and this appeal ensued.

that does not contradict the judge's rulings.  See Commonwealth v. Robinson-Van Rader, 492 Mass. 1, 4 (2023).

On or about February 4, 2020, Inspector David Breton of the United States Postal Service received information from his law enforcement counterpart in Puerto Rico that there was a suspicious package addressed to the area within Inspector Breton's jurisdiction in Massachusetts.  Inspector Breton received a photograph of the package by e-mail.  He determined that the name on the return address "did not match up with the return address, although individuals with that name appeared to live in that general area of Puerto Rico."  He asked his counterpart to send the package to him at the post office in Massachusetts.  The package arrived on approximately February 9 or 10, 2020.

Inspector Breton contacted Detective Jason Bonadies of the Southbridge police department to set up a "controlled delivery" of the package.  Inspector Breton made the delivery to the front porch of a single-family residence in Southbridge, Massachusetts, where the package was addressed.  The addressee on the package was listed as "Nick Jolin."  Inspector Breton knocked on the door, "but [when] there was no answer," he scanned the package as "delivered" and left it on the porch. Inspector Breton then "joined Detective Bonadiaz [sic] in

conducting surveillance to see who would pick up the package." Eventually a woman arrived at the house, picked up the package, and brought it inside the house.  The officers then knocked on the front door, which "had like blinds on it that were open giving [them] a clear sight into the kitchen, and right on the kitchen counter top was the package."  They asked the woman if she knew the addressee on the package, Nick Jolin, and she told the officers that he "periodically" stayed at the residence. They asked her to contact Jolin and ask him to come to the residence.  She did so and Jolin arrived within twenty minutes.

Jolin denied knowledge of the contents of the package and said that "he was receiving the package for a friend who works with him, and that it was not for him."  Jolin then "consented to the police opening the package."  Inside the package, the officers found illegal narcotics.

Subsequently, Jolin told the officers that "he had been in contact with a friend who was expecting a package, and had been in contact with him quite often in regards to this package." Jolin showed the officers text messages between him and the defendant, which confirmed that the defendant had inquired about a package from Puerto Rico.  In those text messages, the defendant had stated "that there was food in the package, which he was worried would spoil."

3

The officers asked Jolin to contact the defendant to let him know that the package had arrived.  He did so, and after a short period of time the defendant arrived at the residence in a vehicle.  The defendant exited the vehicle, picked up the package from the front porch, placed it in the trunk of the vehicle, and "got back into the driver's side to drive away."  Before he could exit the driveway, the officers stopped the vehicle and arrested the defendant.

Discussion.[2]  1.  Reasonable expectation of privacy.  The Commonwealth contends that the defendant did not have a reasonable expectation of privacy in the package.  "Letters and other sealed packages are in the general class of effects in which the public at large has a legitimate expectation of privacy; warrantless searches of such effects are presumptively unreasonable."  United States v. Jacobsen, 466 U.S. 109, 114 (1984).  "To invoke the protections of either the Fourth Amendment or art. 14, [the defendant] must prove that he had a reasonable expectation of privacy" in the package addressed and sent to Jolin.  Commonwealth v. Delgado-Rivera, 487 Mass. 551, 559 (2021), cert. denied, 142 S. Ct. 908 (2022).

_____

[2] "In reviewing a decision on a motion to suppress, we accept the judge's subsidiary findings absent clear error but conduct an independent review of [the] ultimate findings and conclusions of law" (quotations and citation omitted). Commonwealth v. Jones-Pannell, 472 Mass. 429, 431 (2015).

4

"To successfully challenge a search on Fourth Amendment grounds, the defendant must show that he had a subjective expectation of privacy in the place searched that is accepted by society as objectively reasonable. . . . When evaluating whether a person has a reasonable expectation of privacy, courts examine a variety of factors, such as ownership . . ., possession, access or control, ability to control."

United States v. FNU LNU, 544 F.3d 361, 365 (1st Cir. 2008), cert. denied, 555 U.S. 1198 (2009). See Commonwealth v. Montanez, 410 Mass. 290, 301 (1991).[3]

Here, the judge applied the factors delineated in United States v. Aguirre, 839 F.2d 854, 856-857 (1st Cir. 1988), and determined that under the totality of circumstances, the facts demonstrated that the defendant had standing to challenge the search of the package. She found that "Jolin was just the bailee of the package and [the defendant] was the intended recipient." See United States v. Bates, 100 F. Supp. 3d 77, 83-84 (D. Mass. 2015) (defendant can have reasonable expectation of

---

[3] The Commonwealth cites to United States v. Stokes, 829 F.3d 47, 52 (1st Cir. 2016), and other Federal case law to support the proposition that the "weight of persuasive authority declines to confer the protections of the Fourth Amendment on the defendant" because the package was not addressed to him. While it is true that "many of the federal courts of appeals have been reluctant to find that a defendant holds a reasonable expectation of privacy in mail where he is listed as neither the sender nor the recipient, at least absent some showing by the defendant of a connection" to the mail, Stokes, supra, here the text messages that the defendant sent to Jolin establish his connection to and privacy interest in the package, as discussed infra.

privacy in package for which third party is bailee).

Furthermore, we agree with the judge's determination that under relevant precedent, the text messages that the defendant sent to Jolin establish the defendant's reasonable expectation of privacy in the package. Although the package was addressed to Jolin, the text messages confirm that the defendant owned the package, intended to take control of the package after delivery, and had, by directing delivery of the package to Jolin and remaining in contact about the package's impending arrival, "taken normal precautions to protect his privacy," within the meaning of our case law. Commonwealth v. Pina, 406 Mass. 540, 545-546, cert. denied, 498 U.S. 832 (1990). See Rakas v. Illinois, 439 U.S. 128, 152 (1978). The text messages demonstrate more than the defendant's subjective belief that he had an expectation of privacy. In the present context, where the messages show that the defendant and Jolin both believed that the package belonged to the defendant, they also establish the reasonableness of the defendant's expectation of privacy in the package, even though it was not addressed or directly delivered to him. See FNU LNU, 544 F.3d at 365.

The Commonwealth does not dispute the existence of such evidence. Rather, the Commonwealth's claim hinges on the argument that notwithstanding such evidence, the defendant did

not have a reasonable expectation of privacy in the package because, at the time of the search, law enforcement officials had no reason to suspect that the defendant was involved with the matter under investigation. Relevant authority does not support the Commonwealth's proposition that a showing of a reasonable expectation of privacy is contingent on law enforcement authorities' awareness of a defendant's privacy interest at the time of the search or seizure. "[T]he question is not what the police knew but whether the defendant had a reasonable expectation of privacy in the seized object." United States v. Paradis, 351 F.3d 21, 32 (1st Cir. 2003). A defendant has the burden of establishing a protectible interest "and that interest does not depend on the state of mind of the police at the time of the seizure." Id. In this case, the defendant sent Jolin the text messages indicating his ownership interest in the package on or about January 31, 2020, and February 1, 2020, whereas the seizure occurred on or about February 9, or February 10, 2020. Thus, the Commonwealth's argument is unavailing. While a different judge may have reached a different conclusion, under the particular facts of this case, we cannot say that the judge erred in concluding that the defendant had an established and reasonable expectation of privacy in the package at the time of the search.

2.  Reasonable suspicion.  The Commonwealth contends that the officers had reasonable suspicion to detain the package due to the presence of four suspicious factors:  (1) the package was mailed from individual to individual; (2) the package had handwritten labels; (3) one of the names on the package did not match up with postal records; and (4) the weight of the package was between four and ten to twelve pounds.

"Under Federal law, it is well settled that a temporary detention of personal property for investigative purposes is permissible when authorities have a reasonable suspicion of criminal activity."  Commonwealth v. Pinto, 45 Mass. App. Ct. 790, 792 (1998).  See United States v. Place, 462 U.S. 696, 702-703, 709 (1983).  See also Pinto, supra (Federal law applies when United States postal inspector removes package from stream of mail during federal investigation).  Reasonable suspicion exists where law enforcement "has a particularized and objective basis for suspecting legal wrongdoing" (quotation and citation omitted).  United States v. Arvizu, 534 U.S. 266, 273 (2002).  See Commonwealth v. Matta, 483 Mass. 357, 365 (2019) (reasonable suspicion "must be grounded in 'specific, articulable facts and reasonable inferences [drawn] therefrom' rather than on a 'hunch'" [citation omitted]).  The government bears the burden

8

of proof to show that police action was supported by reasonable suspicion. See Commonwealth v. Comita, 441 Mass. 86, 91 (2004).

We agree with the judge that the Commonwealth did not meet its burden of proving that the officers had reasonable suspicion to detain the package. Here, the Inspector did testify as to his training and experience. He also stated that there were some suspicious factors present suggesting that the package was linked to criminal activity, as discussed supra. This evidence, which the judge appears to have credited, established the officers' suspicion. However, without the Inspector's explanation of how his expert knowledge informed his assessment and why those specific factors were indicative of criminal activity, it did not establish that the suspicion was reasonable. "[W]hen an officer relies on his or her training and experience to draw an inference or conclusion about an observation made, the officer must explain the specific training and experience that he or she relied on and how that correlates to the observations made" (emphasis added). Matta, 483 Mass. at 366 n.8. See United States v. Johnson, 171 F.3d 601, 604-606 (8th Cir. 1999) (no particularized and objective basis for suspecting detained package contained narcotics where postal agent failed to articulate how his experience informed his appraisal of package given narcotics profile); United States v.

9

*Cortez*, 449 U.S. 411, 418 (1981) ("[this] demand for specificity in the information upon which police action is predicated is the central teaching of this Court's Fourth Amendment jurisprudence" [citation omitted]).  "Taken individually, each of the foregoing facts is consistent with innocent conduct.  Indeed, taken collectively, the coexistence of these characteristics might well be seen as innocent by the average citizen.  [The officer's] training and experience, however, [gives] a reasonable basis for [the] determination that the package was suspicious," and therefore the Inspector's assessment must be explained.  *United States* v. *Smith*, 383 F.3d 700, 704 (8th Cir. 2004), cert. denied, 547 U.S. 1022 (2006).

To be clear, reasonable suspicion is not a demanding standard.  We do not suggest that the factors on which the officers based their decision to detain the package would not have been sufficient to establish reasonable suspicion if their significance were adequately explained in light of the officers' training and experience.  In the circumstances of the present case, however, without an explanation as to why purported suspicious factors mattered, we cannot say that the judge erred

in determining that the seizure of the package was not supported by reasonable suspicion of criminal activity.

Order allowing motion to suppress affirmed.

By the Court (Meade, Neyman & Hand, JJ.[4]),

Clerk

Entered:   September 10, 2024.

---

[4] The panelists are listed in order of seniority.