## COMMONWEALTH vs. MARIO A. PANETTI.

Berkshire. October 2, 1989. - December 12, 1989.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.

*Search and Seizure*, Expectation of privacy. *Constitutional Law*, Search and seizure, Privacy. *Eavesdropping. Privacy.*

An apartment dweller had a subjectively reasonable and objectively justified expectation of privacy in conversations in his apartment that could be overheard from a basement crawl space to which the public and other tenants had no access; art. 14 of the Massachusetts Declaration of Rights protected that expectation against warrantless eavesdropping by police officers who entered the crawl space with the permission of the owner of the property. [233-235] NOLAN, J., dissenting, with whom LYNCH, J., joined.

INDICTMENTS found and returned in the Superior Court Department on January 7, 1986.

A pretrial motion to suppress evidence was heard by *Charles R. Alberti*, J., and the cases were heard by *Lawrence B. Urbano*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*William A. Rota* for the defendant.

*Joseph A. Pieropan*, Assistant District Attorney, for the Commonwealth.

WILKINS, J. On Friday night, December 20, 1985, David Berkel, the chief of police of Lenox, entered a crawl space under the defendant's first-floor apartment on Housatonic Street with the permission of the owner of the property. The crawl space is used for access to pipes and wiring. Tenants and the public have no access to it. Over a period of more than two hours, Berkel heard the defendant engage in the sale of controlled substances to several people. Armed with

this information, Berkel then obtained a search warrant that led ultimately to the defendant's conviction of illegal possession of a class B substance (cocaine) with intent to distribute it and possession of marihuana.[1]

In his appeal, which we transferred here on our own motion, the defendant challenges only the denial of his motion to suppress evidence. He claims that the crucial information on which the warrant to search his apartment was based was obtained during a constitutionally unreasonable search and that all evidence obtained as a result of that search, including the defendant's statements and controlled substances, should have been suppressed.[2] The focus of the defendant's argument is that he had a subjectively reasonable and objectively justified expectation of privacy in the conversations in his apartment that were overheard by Chief Berkel in the crawl space, and that Chief Berkel's action was a constitutionally unreasonable search.

In deciding whether there has been a search in the Fourth Amendment sense, one must decide whether a person had "a 'constitutionally protected reasonable expectation of privacy.' " *California* v. *Ciraolo*, 476 U.S. 207, 211 (1986), quoting *Katz* v. *United States*, 389 U.S. 347, 360 (1967) (Harlan, J., concurring). See *Commonwealth* v. *D'Onofrio*, 396 Mass. 711, 714 (1986). The first aspect of any analysis is whether the defendant had a subjective expectation of privacy in his conversations, a point the Commonwealth concedes in this case. The second aspect is whether society is willing to recognize that expectation as "reasonable" (*California* v. *Ciraolo*, *supra*), "justifiable," or "legitimate"

---

[1] The judge who denied the motion to suppress evidence obtained as a result of the crawl space surveillance referred to the "basement area of the apartment house" as a "crawl space." The landlord, who was the only witness, testified that the area is a five-foot-tall basement that runs underneath the entire apartment building (except for the area of a central utility room). It can be entered through floor boards in the utility room, a room that normally is kept locked. The basement contains plumbing, a sump pump, a heater, and wiring for electricity, telephones, and cable television.

[2] The defendant relied on the Massachusetts and United States Constitutions in the trial court.

(*Smith* v. *Maryland*, 442 U.S. 735, 740 [1979]). See *Commonwealth* v. *D'Onofrio, supra.*

In applying these principles, courts have treated as important, but not controlling, the question whether the person conducting the surveillance was entitled to be where he was. See *Commonwealth* v. *Hall*, 366 Mass. 790, 794-795 (1975), and cases cited. For example, in the *Hall* case the police overheard conversations by listening from the landing and stairway outside the defendant's apartment. Because the hallway was under the exclusive control of the defendant, the defendant had a justified expectation of privacy, and his conversations were protected. The police had no right to be where they were. *Commonwealth* v. *Hall, supra* at 795. It was not a common hallway, as in other cases where eavesdropping was held not to be a search. See, e.g., *Commonwealth* v. *Boswell*, 374 Mass. 263, 269 (1978); *Commonwealth* v. *Dinnall*, 366 Mass. 165, 166-167 (1974). Cf. *United States* v. *Agapito*, 620 F.2d 324, 331 (2d Cir.) ("What can be heard by the naked ear, when the ear is where it has a right to be, is not protected by the Fourth Amendment"), cert. denied, 449 U.S. 834 (1980); *Lorenzana* v. *Superior Court*, 9 Cal. 3d 626, 634 (1973) ("observations of things in plain sight made from a place where a police officer has a right to be do not amount to a search in the constitutional sense").[3]

Cases not involving a surveillance from a public area or from a common area, such as the case before us, have arisen when the police, lawfully on the premises, have eavesdropped through a common door between two hotel or motel rooms. Federal courts have held that in these circumstances suspects have no justifiable expectation of privacy in conversations audible to police officers in the adjacent room. See *United States* v. *Hessling*, 845 F.2d 617, 619 (6th Cir. 1988); *United States* v. *Agapito, supra* at 330-332; *United States* v.

---

[3]In the *Lorenzana* case, a police officer was trespassing when he looked through the defendant's window. The court held that the officer's search was illegal. *Id.* at 630, 636. See to the same effect, *Pate* v. *Municipal Court*, 11 Cal. App. 3d 721, 724 (1970).

*Jackson*, 588 F.2d 1046, 1051-1052 (5th Cir.), cert. denied, 442 U.S. 941 (1979); *United States* v. *Fisch*, 474 F.2d 1071, 1076-1077 (9th Cir.) (per curiam), cert. denied, 412 U.S. 921 (1973). Our Appeals Court also has upheld a warrantless surveillance in such circumstances. *Commonwealth* v. *Collins*, 11 Mass. App. Ct. 126, 137-139 (1981).

We think it is clear from the cases we have cited that a person would have no justified expectation of privacy in conversations that can be heard by the unaided ear of an eavesdropper lawfully in a contiguous apartment, whether above, beside, or below that person's apartment. As we shall explain, the situation here is significantly different.

The defendant's expectation that no one would be in the crawl space to which neither the public nor tenants had access was far greater than the expectation that nobody would be listening at a common door between two hotel rooms. Certainly the circumstances show the reasonableness of the defendant's subjective expectations. Does that fact also have significance in determining whether the defendant's expectation of privacy was justified or objectively reasonable? The defendant argues that it does and receives support from a respected authority on the law of search and seizure. 1 W. LaFave, Search and Seizure § 2.3 (c), at 392 (2d ed. 1987). Professor LaFave would treat as an unreasonable search the act of a nontrespassing police officer overhearing conversations emanating from a residence if the police officer was positioned where neither neighbors nor the public would ordinarily be expected to be.[4]

_____

[4]Professor LaFave writes: "It is one thing to assert that an occupant cannot claim a justified expectation of privacy as to activities within his dwelling when that conduct is carried out in such a manner as to be readily seen or heard by neighbors or by the passing public. It is quite another to declare that citizens cannot 'feel safe in leaving their windows uncurtained to the skies' or in otherwise failing to seal off each and every aperture in their dwellings. And thus when police surveillance takes place at a position which cannot be called a 'public vantage point,' i.e., when the police — though not trespassing upon the defendant's curtilage — resort to the extraordinary step of positioning themselves where neither neighbors nor the general public would ordinarily be expected to be, the observation or overhearing of what is occurring within a dwelling constitutes a Fourth

For Fourth Amendment purposes, our task is to determine how the Supreme Court of the United States would rule on the facts of this case. We know that in 1986 the Supreme Court was not prepared to recognize and honor as justified a landowner's expectation that his fenced field of marihuana (within the curtilage of his home) was protected from observation by police traveling in public airways. *California* v. *Ciraolo*, 476 U.S. 207, 214-215 (1986) (five-to-four decision). Perhaps more instructive for our purposes is the fact that four Justices disagreed, even when the place from which the observation was made was public. *Id.* at 215 (Powell, J., dissenting). We know of no case since the *Katz* opinion that has upheld a warrantless surveillance of the type conducted here.

Whatever the Supreme Court of the United States might decide under the Fourth Amendment to the United States Constitution, we conclude that the search and seizure of the defendant's conversations violated art. 14 of the Declaration of Rights of the Constitution of the Commonwealth. Society should honor the privacy interests that apartment dwellers and condominium owners have in being free from warrantless eavesdropping by police who have infiltrated crawl spaces and other areas to which neither the public nor any other occupant of the multiple dwelling has access. Because these conversations took place in the defendant's home, the fact that Chief Berkel was lawfully where he was and that the defendant had no legal interest in the crawl space cannot be dispositive of the question. Intrusions into the privacy of one's home raise classic search and seizure problems. See *Commonwealth* v. *Blood*, 400 Mass. 61, 68-69 (1987); *Commonwealth* v. *Forde*, 367 Mass. 798, 805 (1975).[5] The crawl space is not analogous to an adjoining hotel or motel room.

Amendment search. This is really what *Katz* is all about." *Id.* (footnotes omitted).

[5]"The Fourth Amendment, and the personal rights which it secures, have a long history. At the very core stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." *Silverman* v. *United States*, 365 U.S. 505, 511 (1961).

The subjective expectation of privacy here is more reasonable than that present in the motel-hotel room cases. Article 14 justifiably protects that greater expectation against warrantless eavesdropping on the defendant's conversations from a crawl space under his own home.

The Commonwealth grants that, without the information obtained by the unconstitutional search, the search warrant lacked probable cause. The judgments are reversed and the findings are set aside. We remand the case for disposition which, based on the record before us, will result in the indictments being dismissed.

*So ordered.*

NOLAN, J. (dissenting, with whom Lynch, J., joins). I dissent. Admittedly, Chief Berkel was lawfully in the basement area at the defendant's home. The defendant had no legal interest in such space. The court concludes, however, that the defendant could reasonably expect that nobody would be in the area, or if somebody were there, the defendant could deal in drugs and have no fear that his incriminating conversations could ever be used against him. How reasonable is this?

After conceding that the defendant would not have a reasonable expectation of privacy if the basement were an adjoining room in a motel or hotel, quite gratuitously and without citation of any authority, the court concludes that the area is not analogous to an adjoining motel or hotel room. Equally gratuitous is the court's conclusion, despite the absence of any authority, that seizure of the defendant's conversation violated art. 14 of the Declaration of Rights of the Massachusetts Constitution. No authority is cited. No analysis is advanced to support this conclusion. It is simply a naked ipse dixit without logic. This is a strange result.