COMMONWEALTH *vs.* PETER C. MAMACOS.

Essex. December 3, 1990. - April 2, 1991.

Present: LIACOS, C.J., ABRAMS, NOLAN, O'CONNOR, & GREANEY, JJ.

*Search and Seizure,* Expectation of privacy, Brakes of motor vehicle in-
volved in accident. *Constitutional Law,* Search and seizure.

At the hearing of a motion to suppress evidence made by a defendant
charged with two counts of homicide by negligent operation of a motor
vehicle in violation of G. L. c. 90, § 24G, and other motor vehicle of-
fenses, the evidence did not warrant a conclusion that the defendant
had a reasonable expectation of privacy in the braking mechanism of
his truck after his truck was involved in the fatal accident and was
rightfully removed from the highway by the police and, consequently, a
police officer's examination and testing of the brakes, even though con-
ducted after the defendant's request that his truck be returned to him,
was not a search within the meaning of the Fourth Amendment to the
United States Constitution. [637-641]

COMPLAINT received and sworn to in the Amesbury Divi-
sion of the District Court Department on October 30, 1987.

On transfer to the jury session of the Haverhill Division, a
motion to suppress evidence was heard by *William H. Sulli-
van,* J.

An application for an interlocutory appeal was granted by
*O'Connor,* J., in the Supreme Judicial Court for the county
of Suffolk and the appeal was reported by him to the Ap-
peals Court. The Supreme Judicial Court on its own initia-
tive transferred the matter from the Appeals Court.

*S. Jane Haggerty,* Assistant District Attorney, for the
Commonwealth.

*Hugh Samson* for the defendant.

O'CONNOR, J. A criminal complaint issued against the de-
fendant charging him with two counts of homicide by negli-
gent operation of a motor vehicle in violation of G. L. c. 90,

§ 24G (1988 ed.), and one count of operating a motor vehicle negligently so as to endanger in violation of G. L. c. 90, § 24 (1988 ed.). The complaint also charged the defendant with certain civil infractions, namely operating a motor vehicle without an inspection sticker in violation of G. L. c. 90, § 20 (1988 ed.), operating a motor vehicle with defective brakes and handbrake in violation of G. L. c. 90, § 7 (1988 ed.), and altering the height of a motor vehicle in violation of G. L. c. 90, § 7P (1988 ed.). After two mistrials, the defendant filed a motion to suppress the results of tests done to his vehicle and all items removed from his vehicle on the ground that that evidence was obtained without a search warrant. A judge allowed the defendant's motion. A single justice of this court allowed the Commonwealth's application for interlocutory appeal. The case was then entered in the Appeals Court. We transferred the case to this court on our own initiative, and we now vacate the order allowing the motion to suppress.

We summarize the facts stipulated in connection with the suppression hearing as follows. On October 17, 1987, Sergeant Lawrence Streeter of the Amesbury police department was called to the scene of a motor vehicle accident in which two teenagers on a scooter had been killed. Streeter's duties included investigation and reconstruction of serious accidents, and the giving of assistance to other officers in their accident investigations. When he arrived at the scene, Streeter saw the scooter lying under the front bumper and frame of the defendant's pickup truck. The Amesbury police department then towed the truck to Amesbury Coach, where it was secured in a fenced security area.

On October 19 or 20, the defendant requested that his truck be returned to him. On October 20, after that request had been made, Streeter conducted an external examination of the truck's braking system. After doing so, he instructed an employee of Amesbury Coach to tow the truck with all four wheels on the road surface so that he could test the braking system. Following that, he instructed the employee to elevate the front wheels so that only the rear wheels were

touching the road surface, and he again tested the truck's braking system.

Next, between October 20 and 22, Streeter returned to the scene of the accident with the defendant's truck and the scooter that had been involved in the accident. He placed the vehicles together as closely as he could to the way he had found them. Streeter then attached the entire mass to a Chitilin Scale and towed it down the road in an effort to discover the force necessary to overcome the friction with the road surface.

On October 22, after examining the exterior of the defendant's truck visually, Streeter asked a mechanic for the town of Amesbury to drive the vehicle and test the braking system with the vehicle operating on its own power. Streeter and the mechanic then removed the wheels from the truck and dismantled the braking system. Then, for the first time, Streeter obtained a search warrant to retain the pieces of the braking system that he had dismantled.

The Fourth Amendment to the United States Constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." The defendant contends that the tests conducted on his truck before a search warrant was issued violated his Fourth Amendment rights as well as his rights under art. 14 of the Massachusetts Declaration of Rights. He does not argue separately with respect to the Federal and State Constitutions, and therefore we confine our discussion to the Fourth Amendment. Our first question, the answer to which resolves this case, is whether the testing of the truck's brakes constituted a "search" in the Fourth Amendment sense. *Maryland* v. *Macon*, 472 U.S. 463, 468-469 (1985). *Commonwealth* v. *Pina*, 406 Mass. 540, 544, cert. denied, 111 S. Ct. 96 (1990). *Commonwealth* v. *D'Onofrio*, 396 Mass. 711, 714 (1986). To determine whether Streeter's actions constituted a search, we

must consider whether his actions intruded on the defendant's reasonable expectation of privacy. *California* v. *Ciraola*, 476 U.S. 207, 211 (1986). *Rawlings* v. *Kentucky*, 448 U.S. 98, 104-106 (1980). *Rakas* v. *Illinois*, 439 U.S. 128, 143, 143-144 n.12 (1978). *Katz* v. *United States*, 389 U.S. 347, 360-361 (1967) (Harlan, J., concurring). *Commonwealth* v. *Pina, supra* at 544. *Commonwealth* v. *Chappee*, 397 Mass. 508, 512 (1986). The question is really two-fold: Did the defendant have a subjective expectation of privacy in his truck's brakes and, if he did, was that expectation one that society is prepared to recognize as objectively reasonable. *California* v. *Ciraola, supra* at 211. *Oliver* v. *United States*, 466 U.S. 170, 177 (1984). *Commonwealth* v. *Panetti*, 406 Mass. 230, 231 (1989). *Commonwealth* v. *D'Onofrio, supra* at 714. The defendant bears the burden of proving that he had a subjective and objectively reasonable expectation of privacy. *Rawlings* v. *Kentucky, supra* at 104. *Commonwealth* v. *Chappee, supra* at 512.

We have no doubt that the Amesbury police were in rightful possession of the defendant's truck after the accident. Although no statute expressly gives police officers the power to tow a motor vehicle from the scene of an accident and to place it in storage, the police do have the statutory authority to tow motor vehicles in other circumstances. For example, G. L. c. 40, § 22D (1988 ed. & Supp. 1989), provides that "the city council or board of selectmen . . . may adopt . . . rules and regulations . . . authorizing the . . . police department . . . to remove . . . any vehicle parked or standing on any part of any way under the control of a municipality in such a manner as to obstruct any curb ramp designed for use by handicapped persons as means of egress to a street or public way . . . or to impede in any way the removal or plowing of snow or ice." General Laws c. 85, § 2C (1988 ed.), provides that "[t]he department [of public works]. . . may authorize [certain police officials] to remove, to some convenient place . . . any vehicle . . . parked or standing on any part of a state highway in such a manner as to impede in any way the removal or plowing of snow or ice or parked or

standing in violation of any rule or regulation adopted under section two . . . ." In addition, G. L. c. 255, § 39A (1988 ed.), at least implies that members of a municipal police department have the power to remove motor vehicles from the scene of an accident. Section 39A says that "[a]ny motor vehicle removed from the scene of an accident and placed for storage in the care of a garage . . . by a member of the state police force, by a member of the metropolitan district police, [or] by a member of the police force of any city or town . . . shall be so stored at the prevailing rates." Lastly, the United States Supreme Court has stated that, "[i]n the interests of public safety . . . automobiles are frequently taken into police custody. Vehicle accidents present one such occasion. To permit the uninterrupted flow of traffic and in some circumstances to preserve evidence, disabled or damaged vehicles will often be removed from the highways or streets at the behest of police engaged solely in caretaking and traffic-control activities. . . . The authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge." *South Dakota* v. *Opperman*, 428 U.S. 364, 368-369 (1976). We are satisfied that the Amesbury police department had a right to remove the defendant's truck from the scene of the accident and to hold it in storage for a reasonable time, which was not shown to have been exceeded in this case.

It is unclear whether the defendant had a subjective expectation of privacy with respect to the truck's brakes. However, we assume in his favor that he did, and we turn immediately to the question whether society is prepared to recognize such an expectation as reasonable.

The Registrar of Motor Vehicles has the statutory authority to "investigate the cause of any accident in which any motor vehicle is involved." G. L. c. 90, § 29 (1988 ed. & Supp. 1989). Section 29 requires that local police departments "notify the registrar . . . of the particulars of every accident [in which any person is killed or injured] which happens within the limits of [its] city, town or jurisdiction." In addition, § 29 provides that, "[w]henever the death of any

person results from any such accident, the registrar shall suspend forthwith the license or right to operate of the person operating the motor vehicle in said accident, and shall order the said license to be delivered to him, unless a preliminary investigation indicates that the operator may not have been at fault . . . ." We set out these portions of the statute not because Sergeant Streeter was necessarily conducting the kind of investigation of which the statute speaks, but to illustrate the legislative determination that society places great importance on learning all the circumstances of any motor vehicle accident resulting in death, and expects that, as part of its investigation, a police department may find it necessary to conduct the kind of tests that Streeter conducted on the braking mechanism of a vehicle in its lawful possession. We think that it would stretch the Fourth Amendment's protections too far to say that society is prepared to recognize as objectively reasonable an expectation of privacy in the braking mechanism of a motor vehicle that has come into police possession following the death of a motorist on the highway.

Motor vehicles registered in this Commonwealth are subject to extensive regulation and inspection. See G. L. c. 90, § 7A (1988 ed.); 540 Code Mass. Regs. §§ 4.03, 4.04 (1988). Such requirements tend to reduce a vehicle owner's reasonable expectation of privacy with respect to the safety equipment on his or her vehicle even without the happening of an accident. All the more so, after an accident resulting in a death, particularly in view of G. L. c. 90, § 29, quoted above, there can be no reasonable expectation of privacy in the equipment and safety features of an involved vehicle in the rightful possession of the police. We conclude that the defendant did not have an objectively reasonable expectation of privacy in the brakes of his truck after the truck was involved in the fatal accident and was removed from the highway by the police. We therefore conclude also that Sergeant Streeter's examination and testing of the brakes, even though conducted after the defendant's request that his vehicle be returned to him, was not a search within the meaning of the Fourth Amendment. *Maryland* v. *Macon, supra* at 469.

*Commonwealth* v. *D'Onofrio, supra* at 714. Therefore, we vacate the order allowing the defendant's motion to suppress the results of the tests done on his truck and the items removed from it, and we remand the case to the District Court for further proceedings.

*So ordered.*