COMMONWEALTH vs. ONE 1985 FORD THUNDERBIRD
AUTOMOBILE.

Middlesex. November 2, 1993. - December 16, 1993.

Present: WILKINS, NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.

*Search and Seizure*, Expectation of privacy, Helicopter surveillance. *Constitutional Law*, Search and seizure, Privacy. *Privacy*.

Discussion of cases considering police surveillance, including helicopter surveillance, and the constitutional protection from unauthorized government intrusion. [606-608]

In a forfeiture proceeding under G. L. c. 94C, § 47, in which the evidence showed that police had a reasonable suspicion that illegal activity was occurring in a certain backyard and as a result they engaged in brief and foreseeable aerial surveillance from a reasonable altitude where they had a right to be, the claimant did not demonstrate a violation of an objectively reasonable expectation of privacy under art. 14 of the Massachusetts Declaration of Rights; the marihuana plants observed growing in the drained swimming pool in the backyard were properly admitted in evidence. [608-610]

CIVIL ACTION commenced in the Superior Court Department on November 27, 1991.

A pretrial motion to exclude evidence was heard by *James F. McHugh*, J., and the case was heard by *Wendie I. Gershengorn*, J.

The Supreme Judicial Court granted a request for direct appellate review.

*Michael Avery* (*John Reinstein* with him) for Mark L. Salvucci.

*Gerard T. Leone, Jr.*, Assistant District Attorney, for the Commonwealth.

GREANEY, J. The Commonwealth brought an action in the Superior Court pursuant to G. L. c. 94C, § 47 (*d*) (1992 ed.), seeking forfeiture of the above automobile on the

ground that it was used to transport marihuana seeds. The claimant, Mark L. Salvucci, filed a motion in limine, to exclude from the forfeiture trial evidence indicating that, on June 19, 1991, marihuana plants were growing on the bottom of an unfilled swimming pool in the backyard of a house at 2 Spring Lane in Framingham. The claimant maintained that the evidence concerning the marihuana plants should be excluded because it was the product of an unlawful search.[1] A judge in the Superior Court, relying on uncontested affidavits and various exhibits related to the motion in limine, entered a written memorandum of decision containing findings of fact and conclusions of law, and denied the motion. All rights in connection with the motion's denial were properly preserved for appellate review. See *Commonwealth v. Gabbidon*, 398 Mass. 1, 7 (1986). A judgment ordering forfeiture of the claimant's automobile was entered. The claimant appealed, and we granted an application for direct appellate review. The claimant argues, as he did below, that the government activity which was the subject of his pretrial motion in limine — the warrantless surveillance by helicopter of the property at 2 Spring Lane — constituted an illegal search in violation of art. 14 of the Declaration of Rights of the Constitution of the Commonwealth. We reject the argument and affirm the judgment of forfeiture.

The following are the relevant facts as found by the judge. Sometime prior to June 4, 1991, a confidential informant indicated to a Marlborough police detective that the claimant was growing a large quantity of marihuana in a swimming pool at 2 Spring Lane in Framingham. On June 4, 1991, the

---

[1] The exclusionary rule, which was developed for use in criminal proceedings, is applicable to a forfeiture action. *Commonwealth v. Nine Hundred & Ninety-two Dollars*, 383 Mass. 764, 765 n.2 (1981). Although the premises at 2 Spring Lane where the observations were made, and the marihuana plants were ultimately seized, were owned by the claimant's parents, the claimant admitted that he owned the marihuana that was seized. He therefore has standing to challenge the search conducted at his parents' house. *Commonwealth v. Amendola*, 406 Mass. 592, 601 (1990).

Marlborough detective passed the information to a Framing-ham police detective.

On Tuesday, June 18, 1991, at approximately 12:10 P.M., two Framingham police officers flew over the house at 2 Spring Lane in a helicopter. Three flights were conducted over the property, one at 1,500 feet, one at 800 feet, and one at 700 feet. On each of the passes, the officers could clearly see in the backyard an in-ground swimming pool which had been drained. In the bottom of the swimming pool, visible to the naked eye, were between 200 and 400 potted plants. One of the officers, using binoculars, was able to determine that the plants were marihuana plants. The officers took photographs of the swimming pool on each pass over the house. After the police conducted their aerial surveillance, the claimant covered the plants with a dark green mesh shade cover that had been ordered in advance.

When the film was developed, the pictures disclosed that the backyard of the house at 2 Spring Lane was surrounded by heavy growth and vegetation as well as a stockade fence, part of which was very new. Close examination of the photographs showed that approximately 200 marihuana plants were being cultivated at the east end of the empty pool. On one side of the pool, the pictures disclosed a small plastic children's pool with vegetation growing in it. The pictures also showed black bales of fertilizer adjacent to the small children's pool, a coiled hose, and a black tarpaulin covering something that the officers assumed was "some sort of drying or holding area adjacent to the potted mari[h]uana plants."

The house at 2 Spring Lane sits on property that has considerable vegetation. From the street in front of the house, all that can be seen is the house and vegetation on both sides. There is no hint that a swimming pool, or even a stockade fence, lies at the rear. The stockade fence surrounding the rear of the property is approximately six feet high. There is no indication that anyone looking through a crack in the stockade fence would be able to see anything at the bottom of the swimming pool or anything inside the children's pool.

The house at 2 Spring Lane was owned by the claimant's parents, who lived there. The claimant himself had a key, free access to the house, and visited his parents frequently. The claimant lived at the house from 1961 to 1986, then left and returned in October, 1991. He lived there from October, 1991, through May, 1992. Between 1986 and 1991, he visited the premises on nearly a daily basis and never saw or heard a helicopter fly over the premises except on June 18, 1991, when the two Framingham officers made their aerial surveillance.

Based on the investigation, the police obtained a search warrant for the property at 2 Spring Lane and consent for a voluntary search of Salvucci's residence in Marlborough. The searches led to the seizure, among other things, of approximately 381 marihuana plants and growing and packaging materials consistent with the cultivation and distribution of marihuana. The claimant admitted to the police that he used the premises at 2 Spring Lane and his own residence to cultivate and distribute marihuana and that the automobile involved in this action was also used in the drug operation.

As the claimant recognizes, his contention that an illegal search was conducted has been resolved under Federal law. In *Florida* v. *Riley*, 488 U.S. 445 (1989), considering similar facts, the United States Supreme Court concluded that the police, flying over an individual's property in a helicopter at an altitude of 400 feet, had not engaged in an illegal search.[2]

---

[2]*Florida* v. *Riley*, 488 U.S. 445 (1989), is a plurality opinion. Four Justices of the Court, relying primarily on the fact that the helicopter flight was permissible under Federal Aviation Administration regulations and had a legal right to be where it was, concluded that no reasonable expectation of privacy had been violated. *Id.* at 451. Justice O'Connor, in concurring in the judgment, also concluded that the helicopter surveillance did not violate an objectively reasonable expectation of privacy. *Id.* at 452-455. In her view, however, the question was not whether the helicopter had the right to be where it was, but whether members of the public commonly travel at the altitude from which the surveillance occurred. *Id.* at 454. Justice O'Connor concluded that the public commonly travels at this altitude, and that an individual therefore reasonably cannot expect freedom from aerial surveillance of his curtilage from an altitude of 400 feet. *Id.* at 455.

Article 14 may, however, afford greater protection to individual rights than does the Fourth Amendment to the United States Constitution. See *Guiney* v. *Police Comm'r of Boston*, 411 Mass. 328, 329 (1991); *Commonwealth* v. *Panetti*, 406 Mass. 230, 234-235 (1989); *Commonwealth* v. *Blood*, 400 Mass. 61, 68 & n.9 (1987). We conclude, contrary to the claimant's arguments, that this helicopter surveillance did not constitute an illegal search under art. 14.

For purposes of art. 14, as for the Fourth Amendment, whether a particular instance of government scrutiny, unauthorized by a warrant, constitutes an unreasonable search under constitutional standards, depends on whether the person had a "reasonable expectation of privacy," *Commonwealth* v. *Panetti*, *supra* at 231, quoting *California* v. *Ciraolo*, 476 U.S. 207, 211 (1986), that was violated by the government. It is conceded here that the claimant had a subjective expectation of privacy in the well-shielded backyard of the house at 2 Spring Lane. The critical point is whether this expectation is one that society would recognize as objectively "reasonable," "justifiable," or "legitimate." *Id.* at 231-232.

This court has considered various factors in determining whether an individual has an objectively reasonable expectation of privacy. These factors include whether the police had a lawful right to be where they were, *Commonwealth* v. *Panetti*, *supra* at 234; whether the public had access to, or might be expected to be in, the area from which the surveillance was undertaken, *id.*; the nature of the intrusion, *Commonwealth* v. *Blood*, *supra* at 70; and the character of the area (or object) which was the subject of the surveillance. *Commonwealth* v. *Mamacos*, 409 Mass. 635, 639-640 (1991). *Commonwealth* v. *Price*, 408 Mass. 668, 672-673 (1990). *Commonwealth* v. *Panetti*, *supra*. The inquiry is one highly dependent on the particular facts and circumstances of the case.

In *Commonwealth* v. *Panetti*, *supra*, the case on which the claimant principally relies, a chief of police was permitted by the defendant's landlord to enter the crawl space beneath the

defendant's first-floor apartment. The crawl space, while not under the defendant's control, was not an area open to the defendant's neighbors or members of the public. From his position in the crawl space, the chief of police eavesdropped on conversations, between the defendant and others, concerning illegal drug sales that were being made in the defendant's apartment. We concluded under art. 14 that, although the chief of police had a legal right to be where he was, a reasonable person would not have expected that the police would eavesdrop on conversations from the crawl space beneath the floor of his home. *Id.* at 234. Although it is clear that the backyard of a private dwelling is viewed as an extension of the home, and accorded similar constitutional protection from unauthorized government intrusion, see *California* v. *Ciraolo, supra* at 212-213, we think that the nature, and the extent, of the intrusion distinguish the police conduct in this case from the conduct in *Commonwealth* v. *Panetti*, which was determined to violate art. 14.

Surveillance techniques that permit the police to eavesdrop, unsuspected, on private conversations, "threaten the privacy of our most cherished possessions, our thoughts and emotions." *Commonwealth* v. *Blood, supra* at 70. The views and photographs taken by the police in this case indicate no comparable invasion of privacy. The police made three passes over the premises at 2 Spring Lane, the lowest at an altitude of 700 feet. No conversations could be overheard, nor, it is stipulated, was there any "physical interference with the claimant's normal use of the backyard area or other parts of the curtilage." Contrast *People* v. *Sneed*, 32 Cal. App. 3d 535, 543 & n.1 (1973) (helicopter surveillance from altitude of twenty to twenty-five feet unreasonable and probably illegal); *Commonwealth* v. *Oglialoro*, 525 Pa. 250, 262-263 (1990) (helicopter surveillance from altitude of fifty feet caused substantial hazard within curtilage and constituted unreasonable search).

The claimant had the burden of establishing that society would recognize as reasonable his expectation of privacy from government intrusion. *Commonwealth* v. *Montanez*,

410 Mass. 290, 301 (1991). It is agreed that helicopter flight at this altitude is legal, and that the police had the right to be where they were. At least one jurisdiction, considering the issue based on its State Constitution, has considered this point dispositive. See *State* v. *Ainsworth*, 310 Or. 613, 617-618 (1990). See also *State* v. *Stachler*, 58 Haw. 412, 418-419 (1977) (no violation of reasonable expectation of privacy where helicopter was not unreasonably low and did not violate applicable laws and regulations).[3] While we do not consider the legality of the police conduct to be conclusive, it is nonetheless a consideration in determining whether an individual's expectation of privacy is objectively reasonable. The police were not engaged in random surveillance of a densely populated area in search of possible criminal activity. A detailed tip from a confidential informant provided a reasonable suspicion that illegal activity was occurring in the backyard of 2 Spring Lane. As Justice Kennedy observed in a helicopter surveillance case decided when he was on the United States Circuit Court of Appeals for the Ninth Circuit, "[i]f there is some justification for concentrating a surveillance on a particular place, as opposed to random investigation to discover criminal activity, that factor is weighed in the balance and contributes to justification for the surveillance." *United States* v. *Allen*, 633 F.2d 1282, 1290 (9th Cir. 1980).

In contrast to the situation in *Panetti*, involving clandestine eavesdropping by a police officer from a crawl space under the floor, where the officer would not be expected to be, the claimant appears to have anticipated that his activities would, or might, be observed by individuals flying over

---

[3]*State* v. *Stachler*, 58 Haw. 412 (1977), was decided on the basis of the Federal Constitution, before the decisions in *Florida* v. *Riley*, *supra*, and *California* v. *Ciraolo*, 476 U.S. 207 (1986). In addition to determining that the helicopter had not violated applicable rules and regulations, the Supreme Court of Hawaii noted that there had been no finding of aerial harassment and no prolonged surveillance, and that there was evidence of occasional overflights of helicopters and crop dusters, and frequent overflights by light aircraft. *State* v. *Stachler*, *supra* at 418-419.

the premises in an aircraft. Although he maintains that he had never before seen a helicopter fly over 2 Spring Lane, he had acquired a green mesh net to cover the plants in the swimming pool and promptly deployed the net after the over-flights. The claimant's anticipation of possible observation from public navigable airspace supports the judge's conclusion that outdoor activity, even in a constitutionally protected area, should take into account the "undeniable fact . . . that overhead passage of manned aircraft at a height of [about] 800 feet . . . is more than [a] theoretical possibility," and that an objectively reasonable person would not expect that activities of the sort engaged in by the claimant would be shielded from aerial surveillance taking place at an altitude of 700 feet.

We do not suggest that a person has no expectation of privacy from government intrusion in his or her backyard, or that aerial surveillance without a warrant can never amount to a search for purposes of art. 14. We conclude that, at least when the police have a reasonable suspicion that illegal activity is occurring in a backyard, and engage in brief, foreseeable aerial surveillance from a reasonable altitude where they have a right to be, it has not been demonstrated that an objectively reasonable expectation of privacy has been violated.

*Judgment affirmed.*