## Commonwealth vs. Barry W. Starr.

No. 00-P-1061.

Worcester. November 16, 2001. - August 16, 2002.

Present: Jacobs, Mason, & Kantrowitz, JJ.

*Search and Seizure,* Automobile, Expectation of privacy. *Constitutional Law,* Search and seizure, Privacy. *Privacy.*

This court concluded that an operator of a motor vehicle had no reasonable expectation of privacy in a "number plate" that was required by law to be "displayed conspicuously" on that vehicle, and that a police officer's examination of the number plate, therefore, was not a search in the constitutional sense [592-594]; similarly, because records of the Registry of Motor Vehicles are open to public inspection, the officer's instigation of a search of registration data contained in those records did not implicate any privacy right [594].

A police officer's following and "observing" a motor vehicle did not constitute pursuit and, therefore, did not implicate constitutional protections; further, the officer's discovery that the vehicle's number plate belonged on another vehicle gave her an objective basis for suspecting that the vehicle was stolen and justification for stopping the vehicle and asking the operator to produce his license and the vehicle's registration; moreover, the operator's failure to provide support for his explanation of a recent plate transfer justified the officer's further request for information and the result of that inquiry, discovery that the operator's license had been revoked, provided probable cause to arrest. [594-595]

Complaint received and sworn to in the Uxbridge Division of the District Court Department on October 12, 1999.

A pretrial motion to suppress evidence was heard by *Douglas W. Stoddard,* J., and the case was also heard by him.

*Edmund F. Chojnowski* for the defendant.

*Sandra L. Hautanen,* Assistant District Attorney, for the Commonwealth.

Jacobs, J. We hold that the operator of a motor vehicle has no reasonable expectation of privacy in a "number plate" that is

required by law[1] to be "displayed conspicuously" on that vehicle. The context of our decision follows.

After a District Court bench trial, the defendant was convicted under G. L. c. 90, § 23, of operating a motor vehicle after the revocation of his license.[2] That trial had followed the denial of the defendant's motion to suppress evidence obtained as a result of a police stop of his vehicle. By stipulation, the only evidence before the judge at both the motion hearing and the trial were facts recorded in a police report and in several documents marked as exhibits.[3] In distilled form, that evidence established that at about 2:48 A.M. on October 12, 1999, police Officer Maureen Glynn was driving a marked cruiser on a public way in Douglas. Traveling in front of the cruiser was a brown Ford Thunderbird. Nothing in the operation of the Thunderbird or its appearance was suspicious or unlawful. Officer Glynn contacted "dispatch" and asked that the registration displayed on the Thunderbird's Massachusetts number plates ("3252FW") be checked "through LEAPS."[4] Upon being advised by "dispatch" that the plates belonged on a blue Ford Taurus, Officer Glynn stopped the Thunderbird. She informed the defendant, who was the operator of that vehicle, that he was being stopped due to the plate discrepancy and asked him for his license and registration. The defendant responded that he did not have the

---

[1]General Laws c. 90, § 6, first sentence, as appearing in St. 1965, c. 700, § 2.

[2]The defendant's sixty-day house of correction sentence was stayed pending appeal.

[3]The documents, other than the police report, generally relate to the other charges against the defendant, see note 5, *infra*, which are not at issue before us.

[4]There is nothing in the record with respect to the identity and function of LEAPS. The Commonwealth's brief states that "[t]he Law Enforcement Agencies Processing System (LEAPS), also known as the Criminal Justice Information System (CJIS), is a computer-based data storage and communications system maintained by the Criminal History Systems Board and used by police and other criminal justice personnel to access law enforcement data from the Registry of Motor Vehicles and the FBI's National Criminal Information Center (NCIC)." The defendant made no argument below as to the reliability of that system or the validity of its use by police. See *Commonwealth v. Tremblay*, 48 Mass. App. Ct. 454, 456 (2000), in which this court describes a call made by a State trooper "through a police dispatcher to the Registry of Motor Vehicles and the 'NCIC/LEAPS' computer system (with a database of VIN numbers of cars reported stolen)."

registration or license with him. He went on to identify himself by name, date of birth, and operator's license number, and explained that his son recently had acquired the Thunderbird and transferred his plates to it. Upon learning that the defendant did not have any documentation to support his explanation, Officer Glynn relayed the defendant's license information to "dispatch" and was informed that the defendant's license had been revoked for operating under the influence. The defendant acknowledged the revocation and was then arrested by Officer Glynn for "operating with a revoked license."[5]

The threshold issue in our review of the denial of the motion to suppress is whether Officer Glynn's use of information appearing on the number plates of the Ford Thunderbird, without benefit of a warrant, constituted a "search" of the defendant in the Fourth Amendment sense of that word.[6] The answer to that question turns on whether the defendant sustained his burden of establishing that Officer Glynn's "activity intruded on [his] reasonable expectation of privacy." *Commonwealth* v. *Pina*, 406 Mass. 540, 544, cert. denied, 498 U.S. 832 (1990). Only if he proves that such an intrusion occurred does the burden shift to the government to show that the search was constitutionally valid. *Ibid.* The defendant sustains his initial burden if he proves "that he had a subjective and objectively reasonable expectation of privacy." *Commonwealth* v. *Mamacos*, 409 Mass. 635, 638 (1991).

---

[5]The defendant later was also charged with operating an unregistered motor vehicle (G. L. c. 90, § 9), and attaching a license plate assigned to another vehicle (G. L. c. 90, § 23). He was found not responsible with respect to the § 9 charge, and the § 23 charge was dismissed by the court.

[6]The defendant's motion to suppress was expressly grounded on the Fourth Amendment to the United States Constitution. His passing reference to art. 14 of the Massachusetts Declaration of Rights, made for the first time in his brief in this appeal and without claim that it provides greater protection than the Fourth Amendment, is not sufficient to compel an art. 14 analysis. See *Commonwealth* v. *Pina*, 406 Mass. 540, 542, cert. denied, 498 U.S. 832 (1990); *Commonwealth* v. *Fraser*, 410 Mass. 541, 543 n.3 (1991). See also *Commonwealth* v. *Leonard*, 422 Mass. 504, 506 n.1, cert. denied, 519 U.S. 877 (1996). In any event, although art. 14 has been interpreted as according greater protection to the occupants of vehicles than the Fourth Amendment, see *Commonwealth* v. *Gonsalves*, 429 Mass. 658, 662-663 (1999), we discern no basis in the circumstances for concluding that art. 14 provides extended protection with respect to what is displayed on the exterior of vehicles.

Not surprisingly, the record is silent as to whether the defendant had subjective privacy expectations with respect to the number plate. Even if we make the unlikely assumption that he harbored such thoughts, the determinative issue is whether such expectations are reasonable. That question generally is framed in terms of "whether society is prepared to recognize such an expectation as reasonable," *Commonwealth* v. *Mamacos, supra* at 639, and is treated on review as presenting a question of law. See *id.* at 639-640; *Commonwealth* v. *Krisco Corp.,* 421 Mass. 37, 41-42 (1995).

Societal beliefs, reflecting our common sense, undoubtedly support the conclusion that it is unreasonable to claim privacy in that which one consciously places in public view. That conclusion is expressed in the established principle that "[w]hat a person knowingly exposes to the public . . . is not a subject of Fourth Amendment protection." *Katz* v. *United States,* 389 U.S. 347, 351 (1967). The applicability of that principle to what is displayed on the outside of a motor vehicle is well recognized. "The exterior of a car . . . is thrust into the public eye, and thus to examine it does not constitute a 'search.' " *New York* v. *Class,* 475 U.S. 106, 114 (1986).

In pertinent part, G. L. c. 90, § 6, requires that "[e]very motor vehicle or trailer . . . when operated in or on any way in this commonwealth shall have its register number displayed conspicuously thereon by the number plates furnished by the registrar [of motor vehicles] . . . ." That the plate display is mandated does not affect our analysis. In analogous circumstances involving statutorily required display of a vehicle identification number or inspection sticker, our courts have held that there is no reasonable expectation of privacy. See *Commonwealth* v. *Hason,* 387 Mass. 169, 173 (1982); *Commonwealth* v. *Navarro,* 2 Mass. App. Ct. 214, 219-221 (1974); *Commonwealth* v. *Baldwin,* 11 Mass. App. Ct. 386, 391 (1981).

Given the defendant's explanation to the officer relating to his son's recent transfer of the number plates to the Thunderbird, he understandably does not argue that he was unaware of their display on the vehicle while he was its operator. In any event, we believe that knowledge of the fact that plates are displayed on a motor vehicle may be imputed, as matter of law,

to its operator. Accordingly, we hold that the defendant had no reasonable expectation of privacy in the number plate viewed by Officer Glynn and that its examination, therefore, was not a search in the constitutional sense.[7]

Similarly, because records of the Registry of Motor Vehicles are open to public inspection, see *Direct-Mail Serv., Inc.* v. *Registrar of Motor Vehicles,* 296 Mass. 353, 355 (1937), a police-instigated search of registration data contained in those records does not implicate any privacy right. See also G. L. c. 90, §§ 30 & 30A; *Commonwealth* v. *Wilkerson,* 436 Mass. 137, 141-142 (2002). There is no suggestion in the record that Officer Glynn's decision to check the number plate was based on the defendant's apparent race or ethnicity or was anything but random.[8] While random police *stops* of motor vehicles to check licenses and registrations violate the Fourth Amendment, see *Delaware* v. *Prouse,* 440 U.S. 648 (1979), random computer *checks* of number plates do not.

The other issues raised by the defendant are without merit. Merely following and "observing" a vehicle does not constitute pursuit and, therefore, does not implicate constitutional protections. *Commonwealth* v. *Williams,* 422 Mass. 111, 116-117 (1996). See *Commonwealth* v. *Stoute,* 422 Mass. 782, 790 (1996); *Commonwealth* v. *Grandison,* 433 Mass. 135, 138 (2001). Once Officer Glynn learned of the number plate discrepancy, she had an objective basis for suspecting that the Ford Thunderbird was stolen and she, therefore, was justified in stopping the vehicle and asking the defendant to produce his license and the vehicle's registration. See *Commonwealth* v. *King,* 389 Mass. 233, 244 & n.15 (1983); G. L. c. 90, § 25. The defendant's inability to supply those documents or to provide

---

[7]Several jurisdictions have reached the same conclusion with respect to displayed number plates. See *United States* v. *Walraven,* 892 F.2d 972, 973-976 (10th Cir. 1989); *Olabisiomotosho* v. *Houston,* 185 F.3d 521, 529 (5th Cir. 1999); *State* v. *Harding,* 137 Ariz. 278, 287 (1983); *State* v. *Richter,* 145 N.H. 640, 640-641 (2000); *State* v. *Myrick,* 282 N.J. Super. 285, 292-295 (1995); *People* v. *Safoschnik,* 238 A.D.2d 448, 449 (N.Y. 1997); *State* v. *Bjerke,* 697 A.2d 1069, 1073 (R.I. 1997).

[8]The record contains a copy of a citation issued to the defendant that lists his race as "W." Had there been any evidence of racial or ethnic profiling, it would present, at the very least, "a real cause for concern." *Commonwealth* v. *Gonsalves,* 429 Mass. at 670 (Ireland, J., concurring).

any documentary support for his explanation of recent plate transfer justified the officer's further request for information. The response from "dispatch" that the defendant's license was revoked provided probable cause to arrest.

*Judgment affirmed.*