COMMONWEALTH vs. JOHN DORA.

No. 01-P-595.

Middlesex. October 8, 2002. - January 15, 2003.

Present: JACOBS, COWIN, & KAFKER, JJ.

*Search and Seizure,* Probable cause, Expectation of privacy. *Constitutional Law,* Privacy. *Identification. Practice, Criminal,* Identification of defendant in courtroom, Sentence.

In a criminal action, the judge properly concluded that police officers had a founded or reasonable suspicion, at the time they inserted one of the keys found in the victim's apartment into the lock on the defendant's apartment door, to believe that the keys belonged to the defendant. [143-144]

A criminal defendant had no constitutionally protected expectation of privacy in the common areas of his apartment building interior to a locked main door, and the unauthorized unlocking of that main door and entry into those common areas by the police did not violate that right of privacy, where the hallways of the defendant's apartment building were accessible to approximately 120 tenants and their invitees, and where the exclusion of the general public by means of the lock, for purposes of security, could not reasonably engender an expectation of privacy in those hallways; moreover, the fact that the officers may have committed a technical trespass in entering the building was of no constitutional consequence. [144-148]

This court concluded that a criminal defendant waived the issue of the victim's unobjected-to trial identification of him being based on an impermissibly suggestive photograph array, where the defendant did not pursue suppression of this evidence before trial and did not seek a voir dire hearing or object at trial; moreover, this court's examination of the array revealed no substantial risk of a miscarriage of justice or constitutional invalidity. [148-149]

At a criminal trial, the judge did not improperly consider defense counsel's tactics in imposing sentence, but rather considered only the nature of the offense and the circumstances surrounding the commission of the crime. [149]

INDICTMENTS found and returned in the Superior Court Department on August 27, 1998.

A pretrial motion to suppress evidence was heard by *Martha B. Sosman,* J., and the cases were tried before *Robert H. Bohn,* J.

*Elizabeth Caddick* for the defendant.

*Joseph J. DeCaporale*, Assistant District Attorney, for the Commonwealth.

JACOBS, J. The defendant was convicted by a Superior Court jury of breaking and entering (G. L. c. 266, § 15) and indecent assault and battery (G. L. c. 265, § 13H).[1] In this appeal, he argues that his motion to suppress should have been allowed because the warrantless entry of police through the locked outer door of his apartment building into the common areas of the building violated his constitutional right to privacy. He also claims that a photographic array used to identify him was impermissibly suggestive and that the judge considered improper factors in sentencing him. We affirm.

1. *The motion to suppress.* We summarize the factual findings of the motion judge, supplemented by uncontroverted evidence from the motion hearing. *Commonwealth* v. *Torres*, 433 Mass. 669, 670 (2001). In the early morning of July 24, 1998, a man entered the victim's apartment and sexually assaulted her while she slept. When the victim awoke, the man retreated and jumped through a window. The victim found keys in her home that she could not identify and that she later turned over to police. A neighbor told police that she had seen a man jump out of the victim's window and run off and that she saw the man later that morning looking around on the ground under a tree on her lawn. The police stopped the defendant, who fit the general description given to them by the victim and her neighbor, approximately one quarter-mile from the scene of the crime. Upon request, the defendant provided identification that included his address. He also made statements about losing his keys that the police regarded as suspicious.[2] The neighbor came upon the police officers while they were speaking with the defendant and told them that she recognized the defendant as the man she had seen earlier on her lawn.

---

[1] The defendant was acquitted of assault with intent to commit rape (G. L. c. 265, § 24).

[2] With support in the record, the motion judge found that the police were "suspicious of the inconsistency in [the defendant's] report that he had just come from home but that he had lost the keys to his home some 'weeks' earlier."

Later that morning, the police went to the address the defendant had given. That address was within an apartment complex consisting of four buildings, each containing six floors and approximately 120 apartments. Using the keys found in the victim's bedroom, the police were able to open the main entry door to one of the buildings. Passing through the entry door and to the fourth floor by elevator, the police arrived at the hallway outside of the defendant's apartment.[3] They inserted a key from the same set of keys into the lock of the apartment door, found that it fit, and turned the lock. They did not open the door after testing the key. The defendant subsequently was arrested.

The defendant's initial argument, that the police did not have probable cause to believe that the keys found in the victim's apartment were his, need not long detain us. In *Commonwealth v. Alvarez*, 422 Mass. 198, 209-210 (1996), the court noted that "[o]ther courts . . . have found that inserting a key into an apartment lock did not require probable cause" and concluded that "the police needed only a founded or reasonable suspicion to insert the key."[4] We agree with the motion judge's conclusion that this standard was amply met.[5] When the police tested the defendant's apartment lock, they knew that he (1) had been in the area of the crime scene; (2) met the victim's general description of her assailant; (3) had admitted that he had lost his keys; (4) had made suspicious responses to their inquiries; and (5) essentially had been identified by the neighbor as the man she had seen jumping from the victim's window and later searching her lawn. They also knew that one of the keys found at the crime scene fit the main entry door to one of the build-

---

[3]During the trial, but not at the motion hearing, the police testified that the identification that the defendant had given them included his apartment number.

[4]In *Alvarez*, the court also concluded that no constitutional rights were violated "by inserting a key into the lock . . . *and turning it to see whether it fit*" (emphasis supplied). *Id.* at 210. No claim is made that turning the key to test the lock implicates a different level of suspicion from that applicable to merely inserting the key.

[5]The standard is objective. The fact that the officer who tested the keys at the defendant's residence testified to acting upon an "investigatory hunch" is of no consequence.

ings in the apartment complex in which he resided.[6]

The defendant's principal argument, citing both the Fourth Amendment to the United States Constitution and art. 14 of the Declaration of Rights of the Massachusetts Constitution,[7] is that he had a constitutionally protected expectation of privacy in the common areas of his apartment building interior to the locked main door and that the unauthorized unlocking of that door and entry into those common areas by the police violated that right of privacy. Consequently, he claims that evidence obtained by the police officers after entering those common areas must be suppressed. See *Wong Sun* v. *United States*, 371 U.S. 471, 488 (1963).

"[W]hether a search in the constitutional sense has taken place . . . turns on whether the police conduct has intruded on a constitutionally protected reasonable expectation of privacy." *Commonwealth* v. *Montanez*, 410 Mass. 290, 301 (1991). Assuming the defendant had subjective privacy expectations in the hallway common area, the determinative issue is whether such expectations are reasonable. "That question generally is framed in terms of 'whether society is prepared to recognize such an expectation as reasonable,' *Commonwealth* v. *Mamacos*, [409 Mass. 635, 639 (1991),] and is treated on review as presenting a question of law." *Commonwealth* v. *Starr*, 55 Mass. App. Ct. 590, 593 (2002).

Whether the occupant of a multi-unit apartment building has a reasonable[8] expectation of privacy in its hallways is a question that cannot be answered categorically. *Commonwealth* v.

---

[6]The motion judge concluded there was no privacy interest in the front door lock of a building containing over one hundred apartments. The defendant does not contest this conclusion.

[7]The defendant's passing reference to art. 14 is made without claim that it provides greater protection than the Fourth Amendment and is not sufficient to compel an art. 14 analysis. See *Commonwealth* v. *Fraser*, 410 Mass. 541, 543 n.3 (1991), and *Commonwealth* v. *Starr*, 55 Mass. App. Ct. 590, 592 n.6 (2002).

[8]The objective standard for testing a claimed expectation of privacy has been defined in terms of whether the expectation is "reasonable," "justified," or "legitimate." See *Commonwealth* v. *Krisco Corp.*, 421 Mass. 37, 41 (1995), quoting from *California* v. *Greenwood*, 486 U.S. 35, 39 (1988), and cases cited.

*Hall*, 366 Mass. 790, 794 (1975). "In evaluating the reasonableness of an individual's expectation of privacy, we look to a number of factors, including the character of the location involved . . . whether the defendant controlled access to the area . . . and whether the area was freely accessible to others." *Commonwealth* v. *Montanez, supra* at 301-302. It is well established that "an individual can have only a very limited expectation of privacy with respect to an area used routinely by others." *Sullivan* v. *District Ct. of Hampshire*, 384 Mass. 736, 742 (1981). *Commonwealth* v. *Montanez, supra* at 302. Given that the hallways of the defendant's apartment building were accessible to approximately 120 tenants and their invitees, the relevant criteria and pertinent case law would appear to place them beyond any constitutionally protected privacy zone. See *Commonwealth* v. *Thomas*, 358 Mass. 771, 774-775 (1971) ("In a modern urban multi-family apartment house . . . a tenant's 'dwelling' cannot reasonably be said to extend beyond his own apartment and perhaps any separate areas subject to his exclusive control"). See also *United States* v. *Hawkins*, 139 F.3d 29, 32 (1st Cir.), cert. denied, 525 U.S. 1029 (1998) ("It is now beyond cavil in this circuit that a tenant lacks a reasonable expectation of privacy in the common areas of an apartment building").

The defendant argues, however, that the locked outer door distinguishes this case and, noting that there are no Massachusetts cases directly on point, claims that a warrantless, unjustified entry into a locked common area, not accessible to the general public, is an unconstitutional search. In support, he relies on *Commonwealth* v. *Hall, supra*; *Commonwealth* v. *Cadoret*, 388 Mass. 148 (1983); and appellate decisions in other jurisdictions that focus on the fact that the police were not authorized to enter a locked common area.

The case before us is readily distinguishable from the *Hall* and *Cadoret* cases because, unlike the defendants in those cases, the defendant here did not enjoy or exercise exclusive control of the areas in issue.[9] Moreover, the fact that members of the public were denied entry does not significantly alter the reality

---

[9]In *Commonwealth* v. *Hall, supra*, the building in issue contained three apartments. An unlocked exterior door opened to a "vestibule" containing two

that the hallways were accessible to a large number of persons. The exclusion of the general public for purposes of security cannot reasonably engender an expectation of privacy in an area accessible to 120 apartment occupants and their invitees. See *United States* v. *Eisler,* 567 F.2d 814, 816 (8th Cir. 1977) ("The locks on the doors to the entrances of the apartment complex were to provide security to the occupants, not privacy in common hallways"). Compare *United States* v. *Holland,* 755 F.2d 253, 256 (2d Cir.), cert. denied, 471 U.S. 1125 (1985) ("[W]e never have held that the common areas must be accessible to the public at large nor have we required a quantified amount of daily traffic through the area as a basis for determining that a common area is beyond an individual's protected zone of privacy").

There is a split among the authorities as to the effect of an unauthorized police entry into the locked common area of a multi-unit apartment building.[10] The defendant relies upon cases holding that a police trespass into a locked common area essentially constitutes a per se unlawful search under the Fourth Amendment.[11] Informed by observations in *Commonwealth* v. *Thomas,* 358 Mass. 771, 773-774 (1971), and *Commonwealth* v. *Simmons,* 392 Mass. 45, 48-49, cert. denied, 469 U.S. 861 (1984), we believe the opposing authorities, which include a majority of the Federal Courts of Appeals that have addressed

locked doors. Behind one of the locked doors, a hallway and stairway led to the second-floor apartment of the defendant and to the unoccupied third-floor apartment. Ownership of the building and possession of a buzzer mechanism that opened the locked door gave the defendant exclusive control of the interior hallway and stairways. Accordingly, the court held that a "justified expectation of privacy . . . arose." *Id.* at 795.

In *Commonwealth* v. *Cadoret, supra,* the court, citing control of access to the premises as a decisional factor, held that the proprietors of a social club who enforced limitations on admission by charging an annual fee and by monitoring admission of members and guests had a reasonable expectation of privacy with respect to the club premises. *Id.* at 150-152.

[10]See 1 LaFave, Search & Seizure § 2.3(b), at 476-478 (3d ed. 1996 & Supp. 2003); 1 Ringel, Search & Seizures, Arrests and Confessions § 8.3(b), at 8-26 to 8-28 (2d ed. 2002).

[11]The defendant cites the concurring opinion of Justice Jackson in *McDonald* v. *United States,* 335 U.S. 451, 458-459 (1948); *United States* v. *Carriger,* 541 F.2d 545, 548-552 (6th Cir. 1976); *United States* v. *King,* 227 F.3d 732, 743-755 (6th Cir. 2000); *United States* v. *Heath,* 259 F.3d 522, 531-534 (6th Cir. 2001); and *People* v. *Trull,* 64 Ill. App. 3d 385, 389 (1978).

the issue,[12] to be better reasoned. In *Thomas*, police acting without invitation or authority entered the cellar of a three-story, six-apartment building. Noting that the cellar was a common area outside the exclusive control of the defendant the court stated: "The search following the entry was not rendered illegal because it was a trespass against the owner of the building." *Commonwealth* v. *Thomas*, *supra* at 775. In *Simmons*, which involved the unauthorized entry by police onto the driveway of private property to view a motor vehicle, the court stated: "The fact that the officers may have committed a technical trespass does not create a Fourth Amendment violation when no expectation of privacy exists. As the United States Supreme Court has noted on several occasions, 'the Fourth Amendment protects people, not places . . . [t]he premise that property interests control the right of the Government to search and seize has been discredited.' *Katz* v. *United States*, 389 U.S. 347, 351-353 (1967), and cases cited." *Commonwealth* v. *Simmons*, *supra* at 49. Such marginalization of property law concepts is especially appropriate when apartment building common areas are in issue. Analytical focus on police trespass to property only detracts from the principal consideration — the reasonableness of privacy expectations in the area subjected to police activity. See *Ouimette* v. *Howard*, 468 F.2d 1363, 1365 (1st Cir. 1972).[13] Here, the controlling circumstance was the accessibility of the hallways of the apartment building to many

---

[12]See *United States* v. *Conner*, 478 F.2d 1320, 1323 (7th Cir. 1973); *United States* v. *Cruz Pagan*, 537 F.2d 554, 558 (1st Cir. 1976); *United States* v. *Eisler*, 567 F.2d 814, 816 (8th Cir. 1977); *United States* v. *Barrios-Moriera*, 872 F.2d 12, 14 (2d Cir.), cert. denied, 493 U.S. 953 (1989) (overruled on other grounds by *Horton* v. *California*, 496 U.S. 128 [1990]); *United States* v. *Acosta*, 965 F.2d 1248, 1252 (3d Cir. 1992); *United States* v. *Nohara*, 3 F.3d 1239, 1242 (9th Cir. 1993). See also *United States* v. *McGrane*, 746 F.2d 632, 634-635 (8th Cir. 1984); *United States* v. *Holland*, 755 F.2d 253, 255-256 (2d Cir.), cert. denied, 471 U.S. 1125 (1985); *United States* v. *Concepcion*, 942 F.2d 1170, 1171-1172 (7th Cir. 1991); *United States* v. *Fields*, 113 F.3d 313, 321-322 (2d. Cir.), cert. denied, 522 U.S. 976 (1997); *United States* v. *Moore*, 463 F. Supp. 1266, 1270 (S.D.N.Y. 1979); *McGregor* v. *Greer*, 748 F. Supp. 881, 887 (D.D.C. 1990); *Penny* v. *United States*, 694 A.2d 872, 875 (D.C. 1997). Compare survey of cases in *United States* v. *Miravalles*, 280 F.3d 1328, 1331-1332 (11th Cir. 2002).

[13]It is when *interiors* of apartments are entered without authority that analytical focus on property rights and on the nature of the place subjected to police activity may be more appropriate. See *Commonwealth* v. *Ortiz*, 376

persons other than the defendant and his invitees. While a technical trespass by police officers theoretically may have civil implications, how they gain access to the common hallways of a multi-unit apartment building is of no constitutional consequence. "An expectation of privacy necessarily implies an expectation that one will be free of *any* intrusion, not merely unwarranted intrusions." *United States* v. *Eisler*, 567 F.2d at 816 (emphasis in original).

Unable to make effective constitutional challenge to the presence of the police in the hallway outside his door, the defendant cannot complain of the officers' testing of the lock of that door. "[A]ny expectation of privacy in the contents of the lock tumbler was minimal." *Commonwealth* v. *Alvarez*, 422 Mass. at 210. As we have noted, the police had the requisite reasonable suspicion for such an "unobtrusive search." *Ibid.*

2. *The photographic array.* Conceding that the issue was not raised in the trial court, the defendant argues that the victim's unobjected-to trial identification of him should not have been admitted in evidence. He argues that the identification was based upon an impermissibly suggestive photographic array shown to the victim soon after the attack. Because the defendant did not pursue suppression of this evidence before trial and did not seek a voir dire hearing or object at trial, this issue is waived. *Commonwealth* v. *Shine*, 398 Mass. 641, 652-653 (1986). See *Commonwealth* v. *Coburn*, 5 Mass. App. Ct. 781, 782 (1977). In any event, our examination of the array of photographs and our review of the record reveals no substantial risk of a miscarriage of justice, see *Commonwealth* v. *Miranda*, 22 Mass. App. Ct. 10, 21 (1986), nor any constitutional invalidity.[14] The photographic identification procedure was not "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons* v. *United*

Mass 349, 351 (1978) (recognizing that "the place involved may be relevant"). See also *Commonwealth* v. *DeJesus*, 56 Mass. App. Ct. 523, 529-530 (2002), involving a police sweep of the interior of an unoccupied apartment. In any event, the pertinent question is whether the police activity defeated the defendant's reasonable expectation of privacy.

[14]The defendant in his reply brief disclaims any appeal based upon ineffective assistance of counsel. He is left, therefore, with only his constitutionally based claim of irreparable misidentification.

*States*, 390 U.S. 377, 384 (1968). See *Commonwealth* v. *Thornley*, 406 Mass. 96, 98-99 (1989).

3. *Sentencing.* The defendant argues that his sentence should be vacated because the judge improperly considered defense counsel's trial tactics and factors inherent in the crime of breaking and entering in the nighttime.[15] Preliminary to announcing that he was going to exceed certain proposed guidelines,[16] the judge, in explaining his sentence, stated that "breaking into somebody's house at night has to be one of the most offensive acts one person can do to another." We do not read these remarks as reflecting anything other than a consideration of "nature of the offense and the circumstances surrounding the commission of the crime," *Commonwealth* v. *Coleman*, 390 Mass. 797, 805 (1984), especially in view of the fact that the sentence imposed was well within the statutory maximum of twenty years. See G. L. c. 266, § 15. The judge's ambiguous and brief reference to defense counsel's tactics was made after his announcement that he intended to exceed the guideline and immediately before his indication of the clarity of the "facts" before the jury. There was no error.

*Judgments affirmed.*

---

[15]The judge imposed a seven- to nine-year sentence for breaking and entering in the nighttime and a concurrent sentence of four to five years for indecent assault and battery. The defendant was unsuccessful in his appeal of these sentences to the Appellate Division of the Superior Court.

[16]The record of the sentencing hearing does not provide a clear indication of how the proposed guidelines were applied, and there is no documentation presented to us with respect to any analysis of such guidelines.